**Jane DOE, a Minor, By and Through her Guardian ad Litem, John DOE, Plaintiff,**

v.

**PETALUMA CITY SCHOOL DISTRICT, and Petaluma Joint Union High School District, Dick Cleclak, Richard Homrighouse, Kenilworth Junior High School and Roes 1 through 50, inclusive, Defendants.**

No. C–93–0123 EFL.

United States District Court, N.D. California.

Aug. 30, 1993.

Anne T. Shelton, Conner, Slabach, Lawrence & Rodney, Santa Rosa, CA, for plaintiff.

Scott N. Kivel, Liebert, Cassidy & Frierson, San Francisco, CA, Robert J. Henry, School and College Legal Services, Sonoma County Office of Educ., Santa Rosa, CA, for defendants.

## ORDER

LYNCH, District Judge.

### INTRODUCTION

Plaintiff Jane Doe has filed suit concerning defendants' alleged failure to put an end to sexual harassment inflicted on her by her peers while she was a student at Kenilworth Junior High School. Defendants' motion to dismiss plaintiff's First Amended Complaint is before the court. For the reasons stated below, the court holds:

(1) The motion to dismiss because the claims are barred by the statute of limitations is DENIED.

(2) The motion to dismiss the Title IX claim is GRANTED (with leave to amend). The court finds that hostile environment sexual harassment claims may be brought under Title IX. To obtain damages, however, the plaintiff must prove intentional discrimination on the basis of sex on the part of an employee of the educational institution, not just that an employee or employees of the institution knew or should have known of the hostile environment and failed to take appropriate action to end it.

(3) The motion to dismiss the Title IX claim against the individual defendants (Homrighouse and Cleclak) is GRANTED (with prejudice) because Title IX makes institutions, not individuals, liable.

(4) The motion to dismiss the section 1983 claim against the school districts is GRANTED (with prejudice) because they are immune under the Eleventh Amendment. The motion to dismiss the section 1983 claim against Homrighouse and Cleclak on the ground of Eleventh Amendment immunity is DENIED because they have been sued in their individual capacities. The section 1983 claim against Cleclak, however, is DISMISSED (with leave to amend) to allege sufficient facts to establish section 1983 liability for him.

(5) The motion to dismiss the section 1983 claim on the merits is GRANTED (with prejudice) to the extent that it is based on a "special relationship" theory within the meaning of *DeShaney*. Plaintiff may amend the section 1983 claim (against the individual defendants only) to the extent that she is claiming another theory of section 1983 liability.

(6) The motion to dismiss the California Civil Code § 52.1 claim is GRANTED (with leave to amend) because plaintiff has failed to allege facts to show that any defendant interfered with her rights by threats, intimidation or coercion.

(7) The motion to dismiss the intentional and negligent infliction of emotional distress claims on the ground of state law immunity is GRANTED (with prejudice) but the motion to dismiss the California Civil Code § 52.1

claim on the ground of state law immunity is DENIED.

(8) The motion to dismiss the entire complaint against Kenilworth Junior High School on the ground that it is not a suable entity is GRANTED (with prejudice).

## BACKGROUND

The factual allegations are drawn from plaintiff's complaint. Plaintiff Jane Doe (Jane) is a minor; she was born on December 30, 1977 and she resides in Petaluma, California. At all times relevant to this suit she was a student at Kenilworth Junior High School (Kenilworth), a public school in Sonoma County, California.

Petaluma City School District and Petaluma Joint Union High School District (PJUHSD) control and manage the public schools in Petaluma, including Kenilworth Junior High School. PJUHSD is a recipient of federal financial assistance.

Defendant Dick Cleclak (Cleclak) is, and at all relevant times was, the principal of Kenilworth. Defendant Richard Homrighouse (Homrighouse) is, and at all relevant times was, a counselor at Kenilworth.

### Plaintiff's Allegations

Jane alleges that she was repeatedly subjected to sexual harassment by other students throughout seventh and eighth grades; that she informed school officials of the harassment, and that they did not respond to the harassment adequately. Most of the harassment was verbal, in the form of statements about Jane having a hot dog in her pants or that she had sex with hot dogs.

Specifically, plaintiff alleges: In mid-Fall, 1990, when she was in seventh grade, two students, Scott and Mike, said to plaintiff, "I hear you have a hot dog in your pants." Within a few weeks, another student said something to her about her having a hot dog in her pants and that there was a rumor spreading around the school about her and hot dogs.

Within a few days Jane reported those incidents to Mr. Homrighouse, her counselor. She told him she was upset and asked him to stop the harassment. He did nothing.

Throughout the fall, students continued to make comments regarding plaintiff having sex with a hot dog and called her "hot dog." Plaintiff went to Homrighouse approximately every other week to get him to stop the harassment. He said that all he could do was warn the students. He never told plaintiff about the Title IX Student/Parent Grievance Policy, nor did he tell her about the Title IX officer for Kenilworth, Mrs. Noll (Noll).

Later in the Fall of 1990, Jane's father, John, spoke to Homrighouse about the comments and rumors. Homrighouse told John that Jane had informed him of the comments and that he was taking care of the problem. Homrighouse did not tell Jane's father about the Title IX Grievance Policy or about the Title IX coordinator. Also in the Fall of 1990, plaintiff's mother spoke to Homrighouse a couple of times. Homrighouse said that everything was going well, that some kids just need time to adjust to junior high, and that he expected the comments to cease in a short time.

In approximately December of 1990, John spoke to Homrighouse because Jane was being harassed by some girls (or one girl) who wanted to fight her because she had reported their harassment. Homrighouse later informed John that he had looked into the matter, spoken to the girl who wanted to fight, and gave plaintiff's father the impression that things would be all right. Nonetheless, the harassment continued.

In the early months of 1991, during an English class, Mario and Scott (two students) were speaking to Jane and made reference to her having a hot dog in her pants. Jane reported these statements to Homrighouse. He told her that the comments were sexual harassment. He called Mario and Scott into his office and warned them.

Jane also asked Homrighouse to do something about the girls making hot dog comments. He advised her that girls could not get into trouble for making such sexual comments because girls could not sexually harass other girls. He told her all he could do was to warn the students and that since there were so many students taunting her and calling her "hot dog" that warning all of them

would be fruitless. Homrighouse did bring the girls in in groups and told Jane to work it out with them. The girls promised to stop the harassment but never did.

Jane's father spoke to Homrighouse after the incident with Mario and Scott. Homrighouse responded by saying essentially "boys will be boys," but he told Jane's father that he had warned Mario and Scott.

The comments continued in the Spring of 1991. Jane talked to Homrighouse about five times a month during that period. She reported being called a "hot dog bitch," "slut" and "hoe" (slang for whore) by girls who were trying to get her to fight. Homrighouse said that he could not stop the girls from talking to Jane because of their free speech rights. Homrighouse did nothing although he knew Jane was frightened and upset. Harassment by both boys and girls continued throughout the Spring of 1991, Jane continued to complain to Homrighouse, and he continued to do nothing about the harassment. Homrighouse assured Jane's mother that he was keeping an eye out for Jane. The comments continued throughout the summer of 1991, both on and off the school grounds.

On the first day of the eighth grade, in September of 1991, a student named Dawn wanted to fight Jane. A friend of Jane's intervened and told Dawn to leave Jane alone. Jane was left alone for one week. Over the next four months, however, comments and threats were made to Jane from both boys and girls on a daily basis. Jane reported the incidents to Homrighouse on a weekly basis, as he had asked her to. She got a reputation as a tattle-tale. Going to school became increasingly emotionally difficult for Jane.

Jane's mother called Homrighouse two or three times in the Fall of 1991 to ask for help. He responded that sooner or later the kids would mature and cease harassing Jane. He stated that there was little he could do since no one had actually hit Jane. Again, he failed to inform Jane's mother about the Title IX grievance procedure or the Title IX coordinator. Jane's father also spoke to Homrighouse three of four times during the Fall of 1991. Homrighouse stated that "boys will be

boys," that he would talk to the students involved, and that things should be getting better. The harassment continued.

On January 21, 1992, Jane was slapped by another student. The incident was reported to Noll, the Vice–Principal (and Title IX coordinator), who was in charge of discipline. She took written statements and suspended the offending student for two days.

On February 20, 1992, a student named Dan stood up in plaintiff's English class and said, "This question is for Jane. Did you have sex with a hot dog?" The entire class laughed. The teacher made Dan apologize. Jane ran out in tears. She reported the incident to Homrighouse. Noll suspended Dan for two English classes. Noll told Jane that this was the first incident that she had been told of regarding the sexual harassment of Jane. Upon Jane's mother's insistence, Dan was suspended for two days.

Students wrote comments about Jane, such as "Jane is a hot dog bitch," on the bathroom walls every day. Jane stopped going to the bathroom during the day.

On February 21, 1992, John met with Cleclak, Noll, and Homrighouse. John told Cleclak that he wanted something done about the harassment of Jane. Cleclak advised John that Noll was the Title IX representative for Kenilworth. Noll stated that she had not been informed about the ongoing harassment of Jane. John asked Homrighouse why he had never informed Noll about the hot dog comments. Homrighouse responded, "I didn't advise her because I didn't feel it was important."

On February 24, 1992, while Jane was buying lunch at the snack bar, she overheard two boys commenting about her preferring Oscar Mayer hot dogs and whether she liked them frozen or cooked. Jane reported this to Noll and a witness verified it. The boys were eventually suspended for two days.

On February 28, 1992, Jane was approached by a girl who wanted to fight. Employees intervened and took Jane to Noll after Jane said she wanted to call her mother. Jane was allowed to call her mother after giving a statement. Her mother imme-

diately came to school and told Noll that Jane would no longer attend Kenilworth.

Jane transferred to another public school in March of 1992, but the comments continued there. Jane now attends a private girl's school. Jane sustained injuries to her body and has and will suffer severe mental and emotional distress as a result of the harassment she suffered. She has undergone medical and psychological treatment as a result of the harassment. In addition, she must now pay tuition for a private school because she could no longer endure the harassment at public school.

Plaintiff filed a claim against all defendants pursuant to Government Code §§ 905 and 905.2. The claim was rejected on July 14, 1992. The complaint in this case was filed on January 11, 1993.

## DISCUSSION

### The Standard for Motions to Dismiss

In considering a motion to dismiss, the court must assume that the plaintiff's allegations are true, and grant the motion only if it appears "beyond doubt" that the plaintiff can prove no set of facts entitling the plaintiff to relief. *Sun Savings & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir.1987); *Federal Sav. and Loan Ins. Corp. v. Musacchio*, 695 F.Supp. 1053, 1058 (N.D.Cal.1988). Motions to dismiss are viewed with disfavor under this liberal standard. *Intake Water Co. v. Yellowstone River Compact Comm'n*, 590 F.Supp. 293 (D.Mont.1983), *aff'd*, 769 F.2d 568 (9th Cir.1985), *cert. denied*, 476 U.S. 1163, 106 S.Ct. 2288, 90 L.Ed.2d 729 (1986). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990). "For purposes of a motion to dismiss, the complaint is construed in the light most favorable to plaintiff and its allegations are taken as true. The court's inquiry is directed to whether the allegations constitute a statement of a claim under Rule 8(a)." 5A Wright & Miller, Federal Practice and Procedure § 1357 at 304–310 (1990) (footnotes omitted). In relevant part, Rule 8(a) provides that the complaint shall include "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."

### Plaintiff's Causes of Action

Jane alleges violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.;* the equal protection clause of the Fourteenth Amendment and her right to privacy as protected by the Fourth, Fifth, Ninth, and Fourteenth Amendments; California Civil Code § 52.1; as well as alleging intentional and negligent infliction of emotional distress.

### 1. The Statute of Limitations

Defendants argue that plaintiff's claims are time-barred. The court disagrees.

#### a. The Federal Claims

▉ Neither Title IX nor section 1983 has its own statute of limitations. The court must look to the statute of limitations for the most closely analogous state law cause of action to determine a federal statute's limitations period when there is no applicable federal statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The statute of limitations for section 1983 actions is the state's personal injury statute. In California, that is Code of Civil Procedure § 340(3), which establishes a one-year period. *Alexopulos v. San Francisco Unified Sch. Dist.*, 817 F.2d 551, 554 (9th Cir.1987).

The one-year statute of limitations also applies to claims under Title IX. In *Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710 (9th Cir.1993) the Ninth Circuit applied the one-year statute of limitations to claims under Title VI, 42 U.S.C. § 2000d, which prohibits discrimination on the basis of race, color, and national origin in programs that receive federal financial assistance. Title IX is based on Title VI and is to be interpreted in a similar manner, *Cannon v. University of Chicago*, 441 U.S. 677, 694–96, 99 S.Ct. 1946, 1956–57, 60 L.Ed.2d 560, 574–75 (1979), so the same statute of limitations should apply. This conclusion is supported by *Bougher v. University of Pittsburgh*, 882 F.2d 74, 77–78 (3rd Cir.1989), in which the Third Circuit

held that Pennsylvania's personal injury statute of limitations applies to Title IX claims.

█ Thus, both federal claims are governed by California's one-year personal injury statute of limitations. Defendants argue that the federal claims are barred, assuming the statute of limitations for the federal claims is not tolled. The court disagrees.

Plaintiff's complaint was filed on January 11, 1993. Absent tolling, acts or omissions that would otherwise subject defendants to liability must have been committed on or after January 11, 1992, for any of plaintiff's claims that come within the one-year statute to be cognizable. It cannot be determined from the face of the complaint that no violations of the federal statutes occurred on or after January 11, 1992. Moreover, the court concludes that the federal claims were tolled due to Jane's minority.

Defendants argue that they responded to the incidents in January and February of 1992 and therefore those incidents may not serve as a basis for plaintiff's claims. Defendants also argue that the January and February 1992 incidents do not rise to the level of a viable claim under Title IX. Defendants cite the incidents mentioned in paragraphs 33, 34, and 37 of the complaint. Paragraph 33 concerns the January 21 incident in which Jane was slapped. The offending student was suspended for two days. Paragraph 34 concerns the February 20 incident in which Dan asked whether Jane has sex with a hot dog. Dan was suspended for two days. Paragraph 37 concerns the February 24 incident in which students commented about Jane's preferring Oscar Mayer hot dogs and wondering whether she liked them cooked or frozen. The offending students were suspended for two days. There are a number of problems with defendant's argument, although plaintiff has failed to raise them.

First, at least some of the incidents in January and February of 1992 clearly do concern harassment on the basis of sex. Whether the court may look to other incidents of sexual harassment in determining whether a certain incident of harassment

constituted sexual harassment need not be decided at this time. Second, whether defendants' response to the incidents conclusively shows that defendants did not intentionally discriminate against Jane on the basis of sex[1] is a question of fact that cannot be resolved on a motion to dismiss.

Third, the complaint refers to a number of incidents of sexual harassment that occurred after January 11, 1992, but does not indicate whether the defendants responded to all of them. Paragraph 35 of the complaint (which appears to concern the time period including January and February of 1992), concerns graffiti applied on a daily basis to the bathroom walls about Jane's alleged sexual interest in hot dogs. The complaint does not indicate that any corrective action was taken regarding the graffiti.

Paragraph 39 states that in March of 1992, Jane transferred to another public school and that the comments continued there. The court assumes that the other public school was in PJUHSD; the complaint does not indicate otherwise. Finally, paragraph 29 provides a general statement that Jane was subjected to harassment on a daily basis in the four months following the September, 1991, start of the school year and that Jane reported these incidents to Homrighouse on a weekly basis. Four months from September, 1991, is January, 1992, the month this suit was filed. The court may not presume that all of those incidents occurred prior to January 11, 1992. Moreover, the complaint does not indicate that all alleged incidents of sexual harassment that occurred in 1992 are specifically mentioned in the complaint. In fact, the general reference to sexual harassment occurring after Jane transferred to another public school indicates that the complaint does not address each incident of sexual harassment that occurred in 1992. It is therefore impossible to find on a motion to dismiss that no violations occurred after January 11, 1992.

Finally, plaintiff might be able proceed on a continuing violation theory. In *Green v. Los Angeles County Superintendent of Sch.,* 883 F.2d 1472, 1480–81 (9th Cir.1989), the

---

1. As explained below, the court finds the requisite intent to be intent to discriminate on the

basis of sex for claims seeking damages under Title IX.

court was faced with a section 1983 claim based on an alleged continuing pattern of discrimination. The court noted that a plaintiff satisfies the statute of limitations if she shows " 'a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period.' " *Id.*, 883 F.2d at 1480 (quoting *Valentino v. United States Postal Serv.*, 674 F.2d 56, 65 (D.C.Cir.1982) (quoting B. Schei & P. Grossman, *Employment Discrimination Law* 232 (Supp.1979))). Depending on the evidence presented, a jury could find that the school had a policy of intentional discrimination against Jane on the basis of sex at least up until the two-day suspensions occurred, which was within the limitations period.

*Tolling*

■ Plaintiff argues that the statute of limitations for her federal causes of action is tolled pursuant to Code of Civil Procedure § 352(a)(1) and that the defendants are estopped from raising the statute of limitations as a defense. As the Ninth Circuit stated in *Alexopulos:*

In the absence of a federal statute of limitations, federal courts borrow not only the applicable state statute, but also the rules for its tolling, unless to do so would be " 'inconsistent with the federal policy underlying the cause of action under consideration.' "

*Id.*, 817 F.2d at 555 (quoting *Board of Regents v. Tomanio*, 446 U.S. 478, 485, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980) (quoting *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct.1991, 56 L.Ed.2d 554 (1978))).

*Section 352*

Section 352 provides:

(a) If a person entitled to bring an action, mentioned in Chapter 3 of this title, be, at the time of the cause of action accrued, either:

1. Under the age of majority; or,

2. Insane; or,

3. Imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life; the time of such disability is not a part of the time limited for the commencement of the action.

(b) This section does not apply to an action against a public entity or public employee upon a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) or Chapter 2 (commencing with Section 910) of Part 3, or Chapter 3 (commencing with Section 950) of Part 4, of Division 3.6 of Title 1 of the Government Code. This subdivision shall not apply to any claim presented to a public entity prior to January 1, 1971.

(c) This section does not apply to an action, other than an action to recover damages or that portion of an action that is for the recovery of damages, relating to the conditions of confinement of a person described in paragraph 3 of subdivision (a), including an action brought by that person pursuant to Section 1983 of Title 42 of the United States Code.

Defendants argue that section 352(b) should be interpreted to prevent the tolling of the statute of limitations not just for state law claims against the state and local governments and their employees but also for federal law claims against them. The theory of the argument is that, despite the fact that the provision literally applies only to claims that must be presented pursuant to the Government Code, section 352(b) expresses the general principle that claims against public entities are not tolled due to minority, regardless of whether they are federal or state claims. The court disagrees.

In *May v. Enomoto*, 633 F.2d 164 (9th Cir.1980), the Ninth Circuit addressed the question of whether section 352(b)'s abolition of section 352(a)'s tolling provisions for claims that must be presented pursuant to the Government Code applies to a prisoner's section 1983 claim.[2] The court held that it did not. The court based its decision on the

---

**2.** Subdivision (c) of section 352 had not been enacted at the time of *May*. Subdivision (c)

therefore has no effect on *May's* significance.

ground that section 1983 claims do not have to be presented pursuant to the Government Code:[3]

> [T]he tolling provision was lifted only as to those tort actions which required as a condition precedent that a claim be presented under the Government Code. This Court and the California Supreme Court have held that the California prelitigation requirements are inapplicable to civil rights actions. *See Donovan v. Reinbold,* 433 F.2d 738, 741–41 (9th Cir.1970) (claims and limitations provisions are inapplicable); *Willis v. Reddin,* 418 F.2d 702, 704–05 (9th Cir.1969) (notice and time requirements are inapplicable); *Williams v. Horvath,* 129 Cal.Rptr. 453, 454–58, 16 Cal.3d 834, 836–42, 548 P.2d 1125, 1126–30 (1976) (claims procedures inoperative).
>
> It is clear therefore that our own precedent and the general principle that a federal court accepts a state court's interpretation of its own statute of limitations, *see Smith v. Cremins,* [308 F.2d 187, 189 (9th Cir.1962) ], result in the conclusion that the statute of limitations was tolled.

*May,* 633 F.2d at 167.

The same reasoning applies to the tolling provision of section 352(a)(1) for causes of action that accrue while the injured party is a minor. The court therefore holds that the section 1983 and Title IX claims were tolled due to Jane's minority.[4]

*Equitable Estoppel*

■ Plaintiff cites *Benner v. Industrial Accident Comm'n,* 26 Cal.2d 346, 159 P.2d 24 (1945), to support her argument that the statute of limitations was equitably tolled for the year-and-one-half during which she relied on Homrighouse's promises that he would

put an end to the harassment. In *Benner,* the plaintiff delayed filing her claim because the defendants stated that they wanted to settle with her and specifically requested that she delay filing a claim so that they could have time to investigate the claim and make a settlement offer. In finding that the defendants were equitably estopped from raising the statute of limitations as a defense, the court held that where "the delay in commencing action was induced by the conduct of the party sought to be charged the latter may not invoke such conduct to defeat recovery." *Id.,* 26 Cal.2d at 349, 159 P.2d at 26.

*Benner* is distinguishable. Here, there is no allegation that a defendant sought to induce plaintiff to delay filing suit. Rather, the allegation is that Homrighouse failed to help Jane despite having promised to. There is no allegation that Homrighouse's promises were made in response to a threat of litigation. The delay and inaction plaintiff complains of is the basis of her substantive claims, not a basis for tolling the statute of limitations. Moreover, it can be inferred from the complaint that by the time she quit Kenilworth, plaintiff had concluded that Homrighouse was not going to fulfill his promises. Despite that fact, plaintiff waited almost a year from when she quit the school to file suit. On the basis of the records so far, the court finds no grounds for the claim that the defendants are estopped from raising the statute of limitations as a defense.

**b. The State Claims**

■ Defendants argue that the state claims (intentional and negligent infliction of emotional distress and California Civil Code § 52.1) are governed by the one-year personal injury statute of limitations provided by

---

3. Only state law claims must be presented pursuant to the Government Code. Thus, Title IX claims do not have to be presented either.

4. The *Alexopulos* court held that section 352(a)(1) does not toll the statute of limitations for a claim under the Education of the Handicapped Act, 20 U.S.C. §§ 1400–1454, because the Act "is designed to assure that representatives of handicapped children would promptly assert the children's educational rights. To permit tolling in favor of the children would undercut this federal policy." *Id,* 817 F.2d at 555. The Ninth Circuit pointed to many provisions of the EHA

and its implementing regulations which demonstrated Congress's desire that parents or guardians act quickly to safeguard the rights of handicapped children, including the provision of the EHA that grants a private right of action to parents on behalf of their children. *Id.,* 817 F.2d at 555–56. Neither section 1983 nor Title IX and its implementing regulations contain similar provisions. The court therefore finds that it would not be inconsistent with federal policy to permit the tolling of the Title IX and section 1983 causes of action.

Code of Civil Procedure § 340(3). Plaintiff argues that the claim under Civil Code § 52.1 is governed by Code of Civil Procedure § 338(a), which provides a three-year period for "[a]n action upon a liability created by statute, other than a penalty or forfeiture."[5] The court disagrees with both sides.

The limitations period for claims against the state and local governments and their employees is ordinarily dictated by the Government Code rather than by the general limitations provisions in the Code of Civil Procedure. In a case such as this one in which a claim is required to be filed with the government, a claim has been filed, and written notice of the denial of the claim has been provided, the plaintiff has six months from the denial of the claim to file suit. Government Code § 945.6(a)(1).

In *Anson v. County of Merced*, 202 Cal. App.3d 1195, 249 Cal.Rptr. 457 (5th Dist. 1988), the court held that the "six-month statute of limitations of Government Code section 945.6 controls over the one-year statute of limitations of Code of Civil Procedure section 340.5 in actions for medical negligence brought against a government entity." *Id.*, 202 Cal.App.3d at 1202, 249 Cal.Rptr. at 461. The court stated:

> With rare exceptions, courts have held that the six-month statute of limitations is inviolate. "Where the notice of rejection complies with section 913 the six-month statute of limitations cannot be extended by provisions outside the Tort Claims Act."

*Id.*, 202 Cal.App.3d at 1200, 249 Cal.Rptr. at 459 (quoting *Dowell v. County of Contra*

*Costa*, 173 Cal.App.3d 896, 901, 219 Cal.Rptr. 341 (1985)).

Similarly, in *Schmidt v. Southern Cal. Rapid Transit Dist.*, 14 Cal.App.4th 23, 17 Cal.Rptr.2d 340 (2d Dist.1993), the court held that "in a personal injury action not involving negligence of a health care provider, compliance with the provisions of the [Tort Claims] Act exempts a claimant from the provisions of Code of Civil Procedure section 340." *Id.*, 17 Cal.Rptr.2d at 344. In that case, the plaintiff had complied with the claim filing requirements of the Tort Claims Act and had filed suit within six months of the denial of her claim but more than one year after her injury occurred. In holding the one-year limitations period of section 340 inapplicable, the court noted that the Tort Claims Act "totally control[s] the procedures by which a claimant pursues recovery from a public entity. As noted, the act dramatically modifies traditional statutes of limitation." *Id.*, 17 Cal.Rptr.2d at 343. *Accord, Cole v. Los Angeles Unified Sch. Dist.*, 177 Cal.App.3d 1, 3, 222 Cal.Rptr. 426, 428 (2d Dist.1986) ("Government Code section 945.6 is a statute of limitation.").

■ The court therefore holds that the statute of limitation for the state claims is provided by Government Code § 945.6 and not one or more provisions of the Code of Civil Procedure. Suit on the state claims had to be brought within six months of July 14, 1992, the date on which the claim was rejected. The complaint in this case was filed on January 11, 1993, which is within six months of July 14, 1992.[6] The state claims are therefore not barred by the statute of limitations.[7]

---

5. Plaintiff also argues that her federal claims are governed by this provision. As noted above, the court disagrees. Plaintiff's counsel's failure to acknowledge the controlling and well established Ninth Circuit and Supreme Court precedent to the contrary with regard to section 1983 is troubling.

6. Generally, for a personal injury claim to be timely, it also must be presented to the government within six months of the accrual of the cause of action. Government Code § 911.2. In the case of a minor, however, that period may be extended to one year so long as the delay in presenting the claim was not due to lack of diligence on the part of the minor herself (as opposed to lack of diligence on the part of her

parents or lawyer). *Hernandez v. County of Los Angeles*, 42 Cal.3d 1020, 1028–31, 232 Cal.Rptr. 519, 525–26, 728 P.2d 1154, 1160–61 (1986). The parties have not addressed when the claim was presented to the government or whether the presentment was timely.

7. Although the state claims are not barred by the statute of limitations, that does not mean that relief is available under state law based on all of the actions and/or inactions alleged in the complaint. If the case reaches the summary judgment stage, the parties may address at that time the question of whether some of the alleged actions or inactions occurred too long ago. In connection with that issue, the parties would be

## 2. Title IX

Defendants make two arguments regarding Title IX. The first is that it does not prohibit hostile environment sexual harassment. The second is that plaintiff has failed to state a claim under Title IX because she has not alleged the requisite intent (intent to discriminate) on the part of defendants necessary to obtain compensatory relief. The court finds that Title IX does prohibit hostile environment sexual harassment but that to obtain damages under Title IX (as opposed to declaratory or injunctive relief), one must allege and prove intentional discrimination on the basis of sex by an employee of the educational institution. To obtain damages, it is not enough that the institution knew or should have known of the hostile environment and failed to take appropriate action to end it.

In *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986), the Supreme Court defined actionable hostile environment sexual harassment as sexual harassment that is "sufficiently severe or pervasive " 'to alter the conditions of [the victim's] employment and create an abusive working environment.' " *Id.,* 477 U.S. at 67, 106 S.Ct. at 2405, 91 L.Ed.2d at 60 (citation omitted). The Supreme Court held that hostile environment sexual harassment is prohibited under Title VII.

Title IX provides, in pertinent part:

No person in the United States shall, on the basis of sex, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

The Supreme Court has indicated that Title IX should be accorded "a sweep as broad as its language." *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 521, 102 S.Ct. 1912, 1918, 72 L.Ed.2d 299, 308 (1982) (quoting *United States v. Price,* 383 U.S. 787, 801, 86 S.Ct. 1152, 1160, 16 L.Ed.2d 267 (1966)).

In *Lipsett v. University of Puerto Rico,* 864 F.2d 881 (1st Cir.1988), the First Circuit held that, in the employment context, Title IX supports hostile environment sexual harassment claims and adopted Title VII's standards for assessing such claims:

[A]n educational institution is liable upon a finding of hostile environment sexual harassment perpetrated by its supervisors upon employees *if* an official representing that institution knew, or in the exercise of reasonable care, should have known, of the harassment's occurrence, *unless* that official can show that he or she took appropriate steps to halt it.

*Id.,* 864 F.2d at 901. *Accord Mabry v. State Bd. of Community Colleges and Occupational Education,* 813 F.2d 311, 316 n. 6 (10th Cir.), *cert. denied,* 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987) (adopting Title VII's standards for assessing sex discrimination under Title IX).

In reaching its holding, the First Circuit looked to EEOC guidelines for employment discrimination by institutions receiving federal financial assistance, which recommend applying Title VII standards, and the legislative history of Title IX, which indicates that Title IX was meant to close a loophole in Title VII by extending its prohibitions to educational institutions. *Id.* at 897. The *Lipsett* court specifically noted, however, that its ruling was confined to employment-related harassment and that it was not addressing

invited to address the effect of Government Code § 911.2 (and *Hernandez*) and whether plaintiff may proceed on a continuing violation theory. As discussed in the section below on immunity under state law, however, the only state claim upon which plaintiff might be able to proceed is the claim under Civil Code § 52.1.

Plaintiff has argued that the statute of limitations for her state claims is tolled due to her minority pursuant to Code of Civil Procedure section 352(a)(1). Pursuant to section 352(b), however, a plaintiff's minority does not toll claims that must be filed under California's Tort Claims Act. Government Code §§ 905 and 905.2 provides that "all claims for money or damages against" local public entities and the state must be presented except those specifically excluded. Plaintiff's state law claims must be presented under the Tort Claims Act since they are for "money or damages" and not specifically excluded. The state claims are therefore not tolled due to plaintiff's minority. In addition, as discussed above, the court finds no basis at this time for plaintiff's claim that the defendants are equitably estopped from raising the statute of limitations as a defense.

the standards to be applied when a student is harassed.[8] *Id.*

*Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991), is the leading Ninth Circuit case on Title VII. In *Ellison*, a female employee of the IRS complained to her employer of sexual harassment by a co-worker. The employee alleged that the employer did not respond adequately to her complaints. The Ninth Circuit noted that:

> a hostile environment exists when an employee can show (1) that he or she was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

*Ellison*, 924 F.2d at 875–76 (footnote omitted). The court held that the severity and pervasiveness of the sexual harassment should be assessed from the perspective a reasonable victim (who is generally a reasonable woman). *Id.*, 924 F.2d at 878–79. The Ninth Circuit noted that employers are not strictly liable for harassment by their employees. Rather, they are liable "for failure to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." *Id.*, 924 F.2d at 881 (quoting *E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1515–16 (9th Cir. 1989)). The court held that when co-worker sexual harassment is alleged, the employer must take action "reasonably calculated to end the harassment," *Id.*, 924 F.2d at 882 (quoting *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir.1983)). The court continued:

> [T]he reasonableness of an employer's remedy will depend on its ability to stop harassment by the person who engaged in harassment. In evaluating the adequacy of the remedy, the court may also take into account the remedy's ability to persuade potential harasses to refrain from unlawful conduct.

*Id.* (footnote omitted).

Courts that have addressed the question of whether *students* may bring hostile environ-

ment claims under Title IX have addressed the question in the context of alleged harassment by teachers. These courts have come to different conclusions about whether Title IX supports a hostile environment claim. For example, the district court in *Bougher v. University of Pittsburgh*, 713 F.Supp. 139, 145 (W.D.Pa.1989), *aff'd on other grounds*, 882 F.2d 74, 77 (3rd Cir.1989), held that it would not recognize a hostile environment claim under Title IX absent additional congressional or administrative direction.

In *Patricia H. v. Berkeley Unified Sch. Dist.*, 830 F.Supp. 1288 (N.D.Cal.1993), however, Judge Orrick of this district held that a hostile environment sexual harassment claim may be brought under Title IX by a student for alleged harassment by a teacher. In reaching that conclusion, Judge Orrick relied on the legislative history of Title IX (which indicates that it was patterned after Title VII), the Supreme Court's reliance on a Title VII case. *(Meritor)* in analyzing intentional discrimination under Title IX (*Franklin v. Gwinnett County Public Schools*, —— U.S. ——, ——, 112 S.Ct. 1028, 1038, 117 L.Ed.2d 208, 224 (1992)), appellate court opinions that have adopted Title VII standards for assessing employment discrimination claims under Title IX (*Lipsett* and *Mabry* ), and the policy of the Office of Civil Right (OCR) of the Department of Education of applying Title VII standards in the Title IX context.

In *Patricia H.*, two children alleged that a teacher at their school had molested them off campus. They alleged that the very presence of the teacher on campus created a hostile environment for them, depriving them of the full enjoyment of their education within the school district. Further, the plaintiffs alleged that school officials failed adequately to respond to their requests for assistance. Indeed, the school's only response was to suggest that the girls go to another district. *Id.* at 1297. Judge Orrick stated:

> Plaintiffs, therefore, argue that the girls were subjected to a hostile educational environment in the BUSD [the school dis-

---

**8.** The plaintiff, a surgical resident, was both an employee and a student.

trict], and that the BUSD failed to take steps reasonably and legally necessary under Title IX to remedy the situation.

Liability of the BUSD defendants is conditioned on both a finding of hostile environment and their knowing failure to act. An employer is liable if it fails to take "immediate and appropriate" action "reasonably calculated" to remedy the harm complained of. *Ellison*, 924 F.2d at 881. Just as the Gwinnett school district could be liable after Franklin complained and received no help, and Ellison's employer could be liable for its subpar efforts on her behalf, the BUSD may be liable if it failed to take reasonable steps to aid Jackie H. and Rebecca H.

*Id.* at 1297–98.

No court has addressed the question of whether student-to-student sexual harassment is actionable under Title IX. The Office of Civil Rights, however, believes that an educational institution's failure to take appropriate response to student-to-student sexual harassment of which it knew or had reason to know is a violation of Title IX. Indeed, OCR has expressed this opinion in finding violations of Title IX at Kenilworth. *See* Letter of Findings by John E. Palomino, Regional Civil Rights Director, Region IX (May 5, 1989), Docket Number 09–89–1050. The OCR for Region V (in Illinois) has come to the same conclusion. *See* Letter of Findings by Kenneth A. Mines, Regional Director, Region V (April 27, 1993), Docket Number 05–92–1174. While Letters of Finding are not due the deference of formal regulations, some deference is due to them as they express the opinion of an agency charged with implementing Title IX and its regulations. These Letters of Finding, however, do not address what private judicial remedies are available under Title IX.

As noted above, Title IX is based on Title VI and is to be interpreted in a similar manner. *Cannon*, 441 U.S. at 694–96, 99 S.Ct. at 1956–57, 60 L.Ed.2d at 574–75. In *Guardians Ass'n v. Civil Service Comm'n of New York*, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), the Supreme Court held (without a majority opinion) that Title VI plaintiffs must show discriminatory *intent* to obtain compensatory relief, discriminatory impact was insufficient. However, the Court also held that, pursuant to regulations promulgated under Title VI, a private plaintiff may obtain limited injunctive relief for unintentional violations of the Act.

In that case, black and Hispanic police officers with relatively low seniority sued the city because of disproportionate layoffs of their members. The disproportionate layoffs were a result of a discriminatory civil service exam which led to their being hired later than other applicants and therefore having low seniority. The district court found the exam to have disproportionate impact on the plaintiff class and to be not job-related, but found that the plaintiffs had failed to prove discriminatory intent. *Id.*, 463 U.S. at 586, 103 S.Ct. at 3224, 77 L.Ed.2d at 871. The district court concluded, however, that a finding of discriminatory intent was not necessary to find that Title VI had been violated and awarded compensatory relief. The Second Circuit reversed, finding that Title VI requires proof of discriminatory intent. *Id.*, 463 U.S. at 588, 103 S.Ct. at 3225, 77 L.Ed.2d at 872. The Supreme Court affirmed on the limited ground that, at least where compensatory relief is sought, discriminatory intent must be proven.

As explained by Justice White (who announced the judgment of the court but was joined, in part, only by Justice Rehnquist), the basis for the judgment was grounded in the unique nature of legislation enacted pursuant to the Constitution's Spending Clause, of which Title VI is an example. Pursuant to the Spending Clause, Congress may place conditions upon the receipt of federal aid. Because the receipt of federal aid is not mandatory, however, the Supreme Court has indicated that compensatory relief is generally unavailable to private plaintiffs suing pursuant to Spending Clause legislation. The Court reasons that because the recipient of the federal aid voluntarily consents to accept the aid and consequent federal requirements, the recipient should not be held liable for compensatory relief absent *notice* that it is committing some act in violation of the federal requirements (or a clear indication from Congress that compensatory relief should be

available even absent notice). *Id.,* 463 U.S. at 596–98, 103 S.Ct. at 3229–30, 77 L.Ed.2d at 878–79, Justice White stated:

[T]he Court has more than once announced that in fashioning remedies for violations of Spending Clause statutes by recipients of federal funds, the courts must recognize that the recipient has "alternative choices of assuming the additional costs" of complying with what a court has announced is necessary to conform to federal law or of "not using federal funds" and withdrawing from the federal program entirely. *Rosado v. Wyman,* 397 US 397, 420–421, 25 LEd2d 442, 90 SCt 1207 [1222] (1970). Although a court may identify the violation and enjoin its continuance or order recipients of federal funds prospectively to perform their duties incident to the receipt of federal money, the recipient has the option of withdrawing and hence terminating the prospective force of the injunction.

. . . .

. . . I put aside for present purposes those situations involving a private plaintiff who . . . has been intentionally discriminated against by the administrators of the program. In cases where intentional discrimination has been shown, there can be no question as to what the recipient's obligation under the program was and no question that the recipient was aware of that obligation. In such situations, it may be that the victim of the intentional discrimination should be entitled to a compensatory award, as well as to prospective relief in the event the State continues with the program.

*Id.,* 463 U.S. at 596–97, 103 S.Ct. at 3229–30, 77 L.Ed.2d at 878–79 (White, J.) (footnote omitted).

In *Franklin,* —— U.S. at ——, 112 S.Ct. at 1038, 117 L.Ed.2d at 224, the Supreme Court held that there is a private damages remedy under Title IX for *intentional* discrimination.

In that case, a female student alleged that she was repeatedly sexually harassed (including subjected to coerced intercourse) by a teacher. The complaint alleged that the school was aware of the teacher's harassment but took no action to halt it and discouraged the student from pressing charges. Further, the school dropped its investigation of the teacher in exchange for the teacher's resignation. The Court stated:

[T]he United States contends that the normal presumption in favor of all appropriate remedies should not apply because Title IX was enacted pursuant to Congress's Spending Clause Power. In *Pennhurst State School and Hospital v. Halderman,* 451 US 1, 28–29, 67 LEd2d 694, 101 SCt 1531 [1545–46] (1981), the Court observed that remedies were limited under such Spending Clause statutes when the alleged violation was *unintentional.* Respondents and the United States maintain that this presumption should apply equally to *intentional* violations. We disagree. The point of not permitting monetary damages for an unintentional violation is that the receiving entity of federal funds lacks notice that it will be liable for a monetary award. See id. [451 U.S. 1] at 17, 67 LEd2d 694, 101 SCt 1531 [at 1539]. This notice problem does not arise in a case such as this, in which intentional discrimination is alleged. Unquestionably, Title IX placed on the Gwinnett County Schools the duty not to discriminate on the basis of sex, and "when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." *Meritor Savings Bank, FSB v. Vinson,* 477 US 57, 64, 91 LEd2d 49, 106 SCt 2399 [2404] (1986). We believe the same rule should apply when a teacher sexually harasses and abuses a student.

*Franklin,* —— U.S. at ——, 112 S.Ct. at 1037, 117 L.Ed.2d at 222–223.[9]

9. Since intentional discrimination had been alleged in *Franklin* and compensatory relief is available for intentional discrimination in violation of Spending Clause legislation, the Court refused to address the question of whether Title IX was actually enacted not just pursuant to the Spending Clause but also pursuant to section 5 of the Fourteenth Amendment. *Franklin,* ——

U.S. at —— n. 8, 112 S.Ct. at 1038 n. 8, 117 L.Ed.2d at 223 n. 8. The *Guardians* Court believed Title VI was enacted pursuant to the Spending Clause, with consequent limits on the relief available to Title VI plaintiffs. Since Title IX is based on Title VI and is to be interpreted as Title VI is interpreted, the court assumes that Title IX was enacted pursuant to the Spending.

### a. Hostile Environment

Defendants first argument is that Title IX does not prohibit hostile environment sexual harassment. The court disagrees. *Franklin* itself appears to have been a hostile environment case since there is no indication in the record that Hill or anyone else conditioned any benefit or detriment on the plaintiff's reaction to the harassment. Moreover, it would violate the Supreme Court's command to give Title IX a sweep as broad as its language to find that Title IX does not prohibit hostile environment sexual harassment. Surely one is "denied the benefits of, or subjected to discrimination under" an education program on the basis of sex when, as alleged here, she is driven to quit an education program because of the severity of the sexual harassment she is forced to endure in the program.[10] That does not mean, however, that the educational institution will always be liable for damages as the result of hostile environment sexual harassment. "Whether a litigant has a cause of action is 'analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive.'" *Guardians Ass'n*, 463 U.S. at 595, 103 S.Ct. at 3229, 77 L.Ed.2d at 877 (White, J.) (quoting *Davis v. Passman*, 442 U.S. 228, 239, 99 S.Ct. 2264, 2274, 60 L.Ed.2d 846 (1979)).

### b. The Requisite Intent

Defendants argue that they may not be held liable for damages unless they have been found to have intentionally discriminated against the plaintiff on the basis of sex. This argument is better taken. The procedural posture of *Franklin* must be born in mind when analyzing it. The alleged sexual harasser in *Franklin*, Andrew Hill, was never a party to the lawsuit. Moreover, the only individual defendant in the case, William Prescott, had been dismissed by the district court, and his dismissal was not challenged on appeal. *Franklin v. Gwinnett County Public Schools*, 911 F.2d 617, 622 (11th Cir. 1990). Thus, the Supreme Court's opinion concerned only the case against the school district.

The record reflects that the school administration (and other teachers including Prescott) were aware of Hill's harassing activities but took no action to stop him and tried to discourage the plaintiff from pursuing her claims. *Id.*, 911 F.2d at 618–19 and —— U.S. at ——, 112 S.Ct. at 1031, 117 L.Ed.2d at 215. Under a Title VII analysis, the school district would have been subject to liability because it knew of the hostile environment and failed to take reasonable actions to end it.

However, although the Court drew on its Title VII decision in *Meritor* to conclude that sexual harassment is intentional discrimination, it made no reference to *Meritor*'s (or any other Title VII case's) discussion of when an employer will be held liable for the sexual harassment of one employee by another. Rather, as the passage quoted above indicates, it appears that the Supreme Court would impose liability on the school district under agency principles for the intentional discrimination by its agent, a school teacher, not for the school district's failure to stop the harassment despite its knowledge of it. Indeed, the Court does not mention the acts of school officials other than Hill in its discussion of liability. *See* section B of the opinion, —— U.S. at —— – ——, 112 S.Ct. at 1037, 117 L.Ed.2d at 222–23.

Although the *Franklin* Court refused to address the question of whether Title IX's prohibitions and remedies are co-extensive with Title VII's, *Id.*, —— U.S. at —— n. 4, 112 S.Ct. at 1032 n. 4, 117 L.Ed.2d at 216 n. 4, the implication of the Court's opinion is that they are not. Although not expressly stated in the opinion, the rule laid down by *Franklin* appears to be that, under Title IX, damages are available only for intentional discrimination but respondeat superior liability exists, so that an institution is deemed to have intentionally discriminated when one of its agents has done so.

---

Clause and has the same limits on relief as Title VI. Plaintiff has not argued to the contrary.

**10.** The court does not mean to indicate, however, that an actionable hostile environment does not exist unless the environment is so bad that the victim feels compelled to quit the institution.

In this case, however, the sexual harassment was perpetrated by students, not by employees of the school district.[11] Plaintiff's theory of the school district's liability (and the individual defendants' liability) is that it should be liable as an employer would be under Title VII: that it knew or should have known of the harassment and failed to take reasonable steps to stop it.[12] Plaintiff has alleged intentional discrimination on the part of defendants (First Amended Complaint at para. 45). But at oral argument, plaintiff's counsel stated her belief that Title VII's "knew or should of known" standard is the equivalent of "discriminatory animus." The court disagrees. The "knew or should have known" standard is in essence a negligence standard: an employer who knows or reasonably should have known of a hostile environment is liable even if it attempts in good faith to eliminate the hostile environment if it is found that the employer's efforts were not reasonably calculated to end the hostile environment. Discriminatory intent (or discriminatory animus) means that one actually meant to discriminate.

In the abstract, it would seem that Title VII's "knew or should have known" standard would provide adequate notice to a recipient of federal funds to satisfy the demands of the Spending Clause.[13] But *Guardians Ass'n* and *Franklin* clearly demand more; they require that discriminatory intent be shown before damages are recoverable.

■ An injunction is not available in this case since plaintiff no longer attends a public school in the defendant districts. The court holds that no damages may be obtained under Title IX (merely) for a school district's failure to take appropriate action in response to complaints of student-to-student sexual harassment. Rather, the school district must be found to have intentionally discriminated against the plaintiff student on the basis of sex. The school's failure to take appropriate action, as alleged in plaintiff's complaint, could be circumstantial evidence of intent to discriminate.[14] Thus, a plaintiff student could proceed against a school district on the theory that its inaction (or insufficient action) in the face of complaints of student-to-student sexual harassment was a result of an actual intent to discriminate against the student on the basis of sex. That, however, does not appear to be the theory behind plaintiff's complaint. The Title IX claim is therefore DISMISSED WITH LEAVE TO AMEND within thirty (30) days of the date of this order.

### 3. May Actions Under Title IX Be Brought Against Individuals?

■ Defendants Cleclak and Homrighouse argue that the Title IX claim should be dismissed as to them because there is no cause of action against individuals under Title IX. Plaintiff has not opposed this argument.

Courts that have addressed the question have held that only institutions may be liable under Title IX, not individuals. *See, e.g., Lipsett,* 864 F.2d at 901. The court agrees that individuals may not be held personally liable under Title IX. Since the Act prohibits its discrimination against beneficiaries in programs and activities that receive federal financial assistance, *see North Haven Bd. of*

---

**11.** Agency principles are inapplicable to the relationship between the school district and its students.

**12.** "The school's failure to stop the harassment ... created an environment abusive to JANE." Opp.Mem. at 4.

**13.** Indeed, it would seem that that is all that is required by *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 11–18, 101 S.Ct. 1531, 1536–40, 67 L.Ed.2d 694, 707–08 (1981) (*Pennhurst I*), one of the primary cases relied on by both the *Guardians Ass'n* and *Franklin* Courts. In that case, the Court analogized obligations imposed under the Spending Clause to contractual obligations and stated: "The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the "contract." [Citations]. There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously."

**14.** Of course, this is a motion to dismiss and we accept the facts that are alleged in the complaint. Whether in fact there will be sufficient evidence of an actual intent to discriminate must await the outcome of a motion for summary judgment.

*Educ. v. Bell,* 456 U.S. at 545, 102 S.Ct. at 1930, 72 L.Ed.2d at 323 (Powell, J. dissenting), it is the educational institution that must be sued for violations of Title IX.

This conclusion is reinforced by the statutory provision for administrative enforcement, which refers only to actions federal agencies may take against institutions. Pursuant to section 902 of the Act, "[t]he ultimate sanction for noncompliance is termination of federal funds or denial of future grants." *North Haven Bd. of Educ.,* 456 U.S. at 514–15, 102 S.Ct. at 1914, 72 L.Ed.2d at 304. While a private right of action for damages exists under Title IX, *Cannon,* 441 U.S. at 688–89, 99 S.Ct. at 1953, 60 L.Ed.2d at 570–71, *Franklin,* —— U.S. at ——, 112 S.Ct. at 1038, 117 L.Ed.2d at 224, the fact that administrative enforcement is directed at the institution that receives federal funds suggests that the private right of action is similarly confined to actions against the institution.

In 1986, Congress implicitly validated *Cannon's* holding that there is a implied cause of action under Title IX by passing what became 42 U.S.C. § 2000d–7, which abrogated Eleventh Amendment ·immunity for violations of Title IX and provides that remedies are available against a state "to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State." 42 U.S.C. § 2000d–7(a)(2). The 1986 amendment is consistent with the conclusion that there is no private right of action against individuals, since only remedies against "public or private entit[ies]" are mentioned.

In *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587–88 (9th Cir.1993), the Ninth Circuit held that individuals may not be held liable for discrimination under Title VII, 42 U.S.C. §§ 2000e–2000e–17, or the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. While those Acts have different language concerning liability than the lan-

guage in·Title IX, their history and the evils they attack are so intimately related to Title IX's history and the evils it attacks [15] that it would make little sense to interpret Title IX to permit individual liability absent clear direction from Congress. That clear direction is lacking. The court holds that individuals may not be held personally liable under .Title IX. The Title IX claims against Cleclak and Homrighouse are therefore DISMISSED WITH PREJUDICE.

### 4. Section 1983 Immunity

Defendants argue that they are all immune from liability under section 1983 due to Eleventh Amendment immunity. The court agrees that the school districts are immune from liability under section 1983 and that school district employees sued in their *official* capacities are also immune. School officials sued in their *individual* capacities, however, are not immune from liability under section 1983.

California school districts are arms of the state for purposes of Eleventh Amendment immunity and are therefore immune from liability under section 1983. *Belanger v. Madera Unified Sch. Dist.,* 963 F.2d 248 (9th Cir.1992), *cert. denied* —— U.S. ——, 113 S.Ct. 1280, 122 L.Ed.2d 674 (1993). Similarly, suits for damages against school officials in their *official* capacities are considered suits against the state for which Eleventh Amendment immunity applies. *Hafer v. Melo,* —— U.S. ——, —— – ——, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301, 309–10 (1991). Suits for damages against school officials in their *individual* capacities arising from their official acts, however, are not barred. *Id.,* at —— – ——, 112 S.Ct. at 361–65, 116 L.Ed.2d at 309–313.

The Ninth Circuit has indicated that in determining whether a suit is an individual or official capacity suit, the court may look to the case's caption, statements in the com-

---

**15.** *See, e.g.,* the House Report regarding Title IX, which states: "One of the single most important pieces of legislation which has prompted the cause of equal employment opportunity is Title VII of the Civil Rights Act of 1964 which prohibits discrimination in private employment based on race, color, religion, sex or national ori-

gin.... Title VII, however, specifically excludes educational institutions from its terms. The title [Title IX] would remove that exemption and bring those in education under the equal employment provision." H.R.Rep. No. 554, 92d Cong., 2d Sess, *reprinted in* 1972 U.S.C.C.A.N. 2462, 2512.

plaint and other papers, and statements made in court. *California v. Harvier*, 700 F.2d 1217 (9th Cir.), *cert. denied*, 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983). The caption in this case provides no hint. The discussion at pages 13–14, lines 27–9, in Plaintiff's memorandum in opposition to defendants' motion suggests that plaintiff is suing Cleclak and Homrighouse in their individual capacities ("Public entities may very well be immune from suit arising under 42 U.S.C. Sec. 1983, however, the individual Defendants are not.") The court therefore finds that the section 1983 claims have been brought against Cleclak and Homrighouse in their individual capacities.

■ In her complaint, however, plaintiff does not allege that Cleclak had any actual knowledge of the harassment or of her complaints until the month before she left the school. There is no respondeat superior liability under section 1983. *Monell v. Department of Social Services of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611, 636 (1978). The section 1983 claim against Cleclak is therefore DISMISSED WITH LEAVE TO AMEND within thirty (30) days of the date of this order.

The section 1983 claims against the school districts (and the school itself, which is not a suable entity in any event) are DISMISSED WITH PREJUDICE. The motion to dismiss the section 1983 claims against Homrighouse (on the basis of immunity) is DENIED because he has been sued in his individual capacity.[16]

### 5. Substantive Attack on the Section 1983 Claim

■ Plaintiff's section 1983 claim appears to be based on a "special relationship" theory. Plaintiff argues that a "special relationship" exists between schools and students because of compulsory attendance laws. Defendants argue that no section 1983 claim has been stated because there is no special relationship between schools and students which would impose a constitutionally required affirmative duty on schools to prevent peer

sexual harassment. The court agrees with defendants.

In *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court held that, absent a special relationship, a state has no constitutional duty to protect the life, liberty, or property of a citizen from deprivations by private actors. In that case, a severely abused child and his mother sued the county and county officials for depriving him of his liberty without due process of law because they failed to intervene to protect the boy from violence by his father, despite the fact that they knew or should have known of the father's potential for violence against the child. The Court held: "As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. at 1004, 103 L.Ed.2d at 259.

The Court rejected the argument that a special relationship was created or assumed by the State because the State knew of the danger and specifically proclaimed its intent to protect the plaintiff. *Id.* The Court noted that in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Court held that the Eighth Amendment "requires the state to provide adequate medical care to incarcerated prisoners," reasoning that "because the prisoner is unable ' "by reason of the deprivation of his liberty [to] care for himself," ' it is ' "just" ' that the State be required to care for him." *DeShaney*, 489 U.S. at 198–99, 109 S.Ct. at 1005, 103 L.Ed.2d at 260–61 (quoting *Estelle*, 429 U.S. at 103–04, 97 S.Ct. at 290–91, quoting *Spicer v. Williamson*, 191 N.C. 487, 490, 132 S.E. 291, 293 (1926)) (footnote omitted). The *DeShaney* Court also noted that in *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court extended *Estelle*'s reasoning under the Due Process Clause to protect mental patients who had been involuntary committed. *DeShaney*, 489 U.S. at 199, 109 S.Ct. at 1005, 103 L.Ed.2d at 261. The Court explained:

---

**16.** When plaintiff amends her complaint, she should specify that the section 1983 claim against Homrighouse is in his individual, not official, capacity.

The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. [citations]. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitations which it has imposed on his freedom to act on his own behalf.... In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interest against harms inflicted by other means.

*Id.,* 489 U.S. at 200, 109 S.Ct. at 1005–06, 103 L.Ed.2d at 261–62.

The question is whether compulsory school attendance laws alone create a restraint on personal liberty within the meaning of *De-Shaney.* The court holds that they do not.

In *D.R. v. Middle Bucks Area Vocational Technical Sch.,* 972 F.2d 1364 (3rd Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993), public high school students alleged that they were repeatedly sexually molested by other students and that school officials knew of the continuing molestation but did nothing to stop it. The Third Circuit held that, for purposes of section 1983 liability, the compulsory school attendance laws and *in loco parentis* authority of the school officials did not create a special relationship between the school and the students based on restraint of the students' liberty such that the school had to protect the students from molestation by other students. *Id.* at 1369–73.

The court reasoned that students are not wholly dependent upon school authorities for their protection. Rather, it is the parents who decide where the student will go to school; the parents may remove the child from classes (subject only to truancy penalties under Pennsylvania law), even when the student is enrolled in public school; the parents remain the primary caretakers of their children; and the children are only at school during part of the day and remain residents of their homes. Thus, the court concluded, students "may turn to persons unrelated to the state for help on a daily basis." *Id.* at 1372. The Tenth Circuit came to the same conclusion in *Maldonado v. Josey,* 975 F.2d 727, 732 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993), a case in which a child accidentally strangled himself and the plaintiff claimed that the child's teacher was liable under section 1983 for failing to supervise her students.

In *J.O. v. Alton Community Unit Sch. Dist. 11,* 909 F.2d 267 (7th Cir.1990), the Seventh Circuit found no special relationship between school officials and students in a case in which the students were allegedly molested by a teacher. The alleged molester was not a defendant in the case. The court held:

By mandating school attendance for children under the age of sixteen, the state of Illinois has not assumed responsibility for their entire personal lives; these children and their parents retain substantial freedom to act.... School children are not like mental patients and prisoners such that the state has an affirmative duty to protect them.

.... In addition to a taking of a liberty interest in violation of the fourteenth amendment, the plaintiffs also claim they were deprived of the right to an education free from government interference and of their fourth amendment search and seizure rights, as incorporated by the fourteenth amendment. We do not express any opinion on the merits of the plaintiffs' alternative characterization of their rights except to say that it adds little to their case. The plaintiffs do not allege that any of the school defendants deprived them of these other civil liberties but that the school

defendants' agent violated these liberties. What the plaintiffs need to show is not an expansive list of liberties allegedly taken from them but some action by the defendants that would justify the imposition of liability.

*Id.,* 909 F.2d at 272–73. The court, however, granted the plaintiffs leave to amend to state a claim under section 1983, finding it possible that sufficient facts could be alleged to support such a claim, as if the plaintiffs had alleged that the school administrators had enacted policies that allowed sexual abuse to flourish. *Id.,* 909 F.2d at 273.

In contrast to *J.O.,* in *Doe v. Taylor Indep. Sch. Dist.,* 975 F.2d 137 (5th Cir.1992), *cert. denied sub nom., Caplinger v. Doe,* —— U.S. ——, 113 S.Ct. 1066, 122 L.Ed.2d 371 (1993), *reh'g, en banc, granted, Doe v. Taylor Indep. Sch. Dist.,* 987 F.2d 231 (5th Cir.1993), a Fifth Circuit panel found that a school coach's molestation of a student violated her substantive due process rights and that the school's superintendent and principal violated her constitutional rights by failing to protect her from the coach. The court grounded its ruling both in the school officials' responsibility for monitoring and disciplining subordinate employees and in the school officials' "constitutional duty to protect schoolchildren from known or reasonably foreseeable harms occurring during or in connection with school activities." *Id.,* 975 F.2d at 144–147. The court found that the compulsory school attendance laws created a special relationship between school officials and students because they placed students in the "functional custody" of school officials within the meaning of *DeShaney. Id.,* 975 F.2d at 147.[17] The Court reasoned:

> Parents, guardians, and the children themselves have little choice but to rely on the school officials for some measure of protection and security while in school and can reasonably expect that the state will provide a safe school environment. To hold otherwise would call into question the constitutionality of compulsory attendance statutes....

*Id.*

However, not only is the Fifth Circuit reconsidering this case, but the panel expressly limited its ruling to cases in which the injury is inflicted by a school employee. It stated: "This does not mean that school officials are liable in the ordinary course for injuries to students inflicted by fellow students." *Id.* In a footnote to that sentence, the court stated: "The precise contours of a school official's duty, as it pertains to injuries inflicted by someone other than a school teacher (or other subordinate) is not before us." *Id.,* 975 F.2d at 147 n. 14.

■ While the court recognizes the need for children to be safe while at school (and elsewhere), the court finds the Third and Seventh Circuits' application of *DeShaney* to the school environment to be more persuasive than the Fifth Circuit panel's and therefore follows their holdings. Compulsory school attendance laws do not make schools the functional equivalent of prisons. The court holds that, in general, for purposes of section 1983 liability, no special relationship exists between school officials and students such that school officials have a constitutional duty to protect students from the acts of other students. This appears to be the basis of plaintiff's section 1983 claim. Plaintiff's section 1983 claim is DISMISSED WITH PREJUDICE to the extent that it is grounded in the special relationship theory. Plaintiff may amend her section 1983 claim within thirty (30) days of the date of this order to the extent that the claim is based on another

---

17. The court relied in part on its earlier decision in *Lopez v. Houston Indep. Sch. Dist.,* 817 F.2d 351 (5th Cir.1987). In that case, a student was alleged to have been beaten on a school bus by another student. It was alleged that the beating occurred for over a half an hour, that the bus driver did nothing to stop it, and that the bus driver did not even pull the bus to the side of the road during the beating. The court held that there was a triable issue of whether the bus driver was in callous disregard of the beaten student's constitutional rights and whether this callous indifference was the cause of the student's injuries, that is, whether the injuries occurred after the driver should have intervened. That case was decided prior to *DeShaney.* Moreover, it is distinguishable from the case at bar since confinement in a moving school bus while being beaten arguably is tantamount to custody within the meaning of *DeShaney* since the victim's ability to flee or otherwise seek help is entirely in the control of the bus driver.

theory or theories of section 1983 liability. If plaintiff amends the section 1983 claim, she must state her theory or theories of section 1983 liability specifically.

### 6. California Civil Code Section 52.1

■ Defendants move to dismiss plaintiff's claim under California Civil Code § 52.1.

Civil Code § 52.1 provides, in part:

(a) Whenever a person or persons, whether or not acting under color of law, interferes by threats, intimidations, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured.

(b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured.

(d) Whenever a court issues a temporary restraining order or preliminary or permanent injunction in an action brought pursuant to subdivision (a) or (b), ordering a defendant to refrain from conduct or activities, the order issued shall include the following statement: VIOLATION OF THIS ORDER IS A CRIME PUNISHABLE UNDER SECTION 422.9 OF THE PENAL CODE.

(e) The court shall order the plaintiff ... to deliver ... two copies of any order ... granted pursuant to this section ... to each local law enforcement agency having jurisdiction over the residence of the plaintiff and any other locations where the court determines that acts of violence against the plaintiff are likely to occur....

....

(h) In addition to any damages, injunctions, or other equitable relief awarded in an action brought pursuant to subdivision (b), the court may award the petitioner or plaintiff reasonable attorney's fees.

(i) A violation of an order described in subdivision (d) may be punished either by prosecution under Section 422.9 of the Penal Code, or by a proceeding for contempt.... [I]f it be determined that the person proceeded against is guilty of the contempt charged ... the person may be ordered imprisoned in a county jail not exceeding six months....

(j) Speech alone shall not be sufficient to support an action under subdivision (a) or (b), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat.

■ Defendants argue that section 52.1 is part of the Unruh Civil Rights Act, Civil Code § 51, *et seq.*, and that under the Unruh Act plaintiff must plead (and prove) an intentional denial of access to a public accommodation and also that defendants constitute a "business establishment." It appears that section 52.1 is at least a "component" of the Unruh Civil Rights Act.[18] Pub-

**18.** *See Olympic Club v. Superior Court,* 229 Cal. App.3d 358, 363, 282 Cal.Rptr. 1, 3 (1st Dist. 1991), *MaJor v. Miraverde Homeowners Ass'n,* 7 Cal.App.4th 618, 9 Cal.Rptr.2d 237, 240 (2d Dist. 1992) and *McCalden v. California Library Ass'n*

955 F.2d 1214, 1220–21 (9th Cir.), *cert. denied sub nom., Simon Wiesenthal Center for Holocaust Studies v. McCalden,* —— U.S. ——, 112 S.Ct. 2306, 119 L.Ed.2d 227 (1992) from which it can

lic schools, however, *are* business establishments within the meaning of the Act. *See Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal.3d 72, 79, 219 Cal.Rptr. 150, 154, 707 P.2d 212, 216 (1985) and *Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F.Supp. 947, 952–53 (E.D.Cal.1990). Furthermore, although section 52.1 apparently is part of the Unruh Civil Rights Act, the language of section 52.1 clearly indicates that it reaches the actions of individuals and is not confined to situations in which the plaintiff has been denied access to a business establishment.

While defendants have failed to raise the issue specifically, to prevail on a claim under section 52.1, plaintiff must prove that the defendant(s) interfered (or attempted to interfere) with her rights by *threats, intimidations, or coercion* (and that the defendant(s) did so other than by speech alone, unless the speech itself threatened violence).[19] Plaintiff has not alleged any facts that show (or from which it can be inferred) that any defendant interfered (or attempted to interfere) with her rights by threatening, intimidating, or coercing her. "Dismissal can be based on ... the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri*, 901 F.2d at 699. The claim under Civil Code § 52.1 is therefore DISMISSED WITH LEAVE TO AMEND within thirty (30) days of the date of this order.[20]

### 7. Immunity Under State Law

▪ Plaintiff's state law claims include intentional and negligent infliction of emotional distress as well as a violation of Civil Code § 52.1. Defendants argue that those claims should be dismissed because plaintiff has failed to state a claim under them and because all defendants are immune from suit

under them. Although neither party has addressed this question, the court finds that immunity is not available for a violation of Civil Code § 52.1 since the Unruh Act specifically creates liability for public schools and section 52.1 specifically provides liability for individuals "whether or not acting under color of law." Thus, the statute indicates that state actors may be held liable for violations of it.

▪ Immunity, however, is available for the claims of intentional and negligent infliction of emotional distress pursuant to Government Code §§ 815.2(b), 820.2 and 820.8. Section 815.2 provides:

(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.

Government Code § 820.2 provides:

Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion is abused.

Government Code § 820.8 provides:

Except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person. Nothing in this section exonerates

---

be inferred that section 52.1 is a component of the Unruh Civil Rights Act.

**19.** Defendants claim only that the plaintiff has failed to allege intentional discrimination.

**20.** It is a significant moral indictment to allege that one has interfered with an individual's rights by threats, intimidation, or coercion. The court is confident that this claim will not be amended unless plaintiff's counsel has first satisfied her obligations under Rule 11 of the Federal Rules of Civil Procedure to see that the claim is well grounded in fact.

Although not raised by defendants, it would appear that the section 52.1 claim may be brought only against the individual defendants in their individual capacities. States and state employees acting in their official capacities enjoy Eleventh Amendment immunity from suit in federal court for violations of state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67, 82 (1984) (*Pennhurst II*), *Hall v. Hawaii*, 791 F.2d 759, 761 (9th Cir.1986).

a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission.

Because the acts and omissions of Mr. Homrighouse that are the basis of the complaint were the result of the exercise of discretion vested in him, he and all of the other defendants are entitled to immunity for intentional and negligent infliction of emotional distress. (There is no immunity from liability for violating Civil Code § 52.1 because section 52.1 falls with in the exception of "[e]xcept as otherwise provided by statute.")

In *Kemmerer v. County of Fresno*, 200 Cal.App.3d 1426, 246 Cal.Rptr. 609 (5th Dist. 1988), a civil service employee brought suit against the county and individual county officials based on disciplinary proceedings instituted against him and his discharge arising out of those proceedings. One of causes of action was intentional infliction of emotional distress. In finding immunity, the court commented:

> "[b]ecause of important policy considerations, the rule has become established that government officials are not personally liable for their discretionary acts within the scope of their authority even though it is alleged that their conduct was malicious. [Citations]."

> . . . .

> We have no doubt that this analysis leads inevitably to the conclusion in the case at bench that the decision of Kelley and Velasquez to institute disciplinary proceedings against Kemmerer was a policy decision involving the exercise of discretion entitling them to immunity under Government Code section 820.2. The decision whether or not to initiate discipline proceedings and what discipline to impose is placed initially on the department head and the decision is entirely within his discretion. The decision involves the exercise of analysis and judgment as to what is just and proper under the circumstances and is not purely a ministerial act.

*Kemmerer*, 200 Cal.App.3d at 1437, 1438, 246 Cal.Rptr. at 616, 617 (quoting *Lipman v. Brisbane Elementary Sch. Dist.*, 55 Cal.2d 224, 229, 11 Cal.Rptr. 97, 359 P.2d 465

(1961)). The same considerations apply here. Defendants are entitled to immunity from the intentional and negligent infliction of emotional distress claims. The court therefore need not address whether plaintiff has otherwise stated a claim with regard to them.

**8. Motion to Dismiss Kenilworth Junior High School**

 Kenilworth Junior High School is not an entity capable of being sued. The entire complaint against it is therefore DISMISSED WITH PREJUDICE.

### CONCLUSION

(1) The motion to dismiss based on the statute of limitations is DENIED.

(2) The Title IX claim is DISMISSED WITH LEAVE TO AMEND. The court finds that hostile environment sexual harassment claims may be brought under Title IX. To obtain damages, however, the plaintiff must prove intentional discrimination on the basis of sex on the part of an employee of the educational institution, not just that an employee or employees of the institution knew or should have known of the hostile environment and failed to take appropriate action to end it.

(3) The Title IX claim against the individual defendants (Homrighouse and Cleclak) is DISMISSED WITH PREJUDICE. The court finds that only institutions may be sued under Title IX, not individuals.

(4) The section 1983 claim against the school districts is DISMISSED WITH PREJUDICE. They are arms of the state and are therefore immune under the Eleventh Amendment. The motion to dismiss the section 1983 claim against Homrighouse and Cleclak on the ground of Eleventh Amendment immunity is DENIED because they have been sued in their individual capacities. The section 1983 claim against Cleclak, however, is DISMISSED WITH LEAVE TO AMEND to allege sufficient facts to establish section 1983 liability for him.

(5) The section 1983 claim is DISMISSED WITH PREJUDICE to the extent that it is based on a "special relationship" theory within the meaning of *DeShaney*. Plaintiff may

amend the section 1983 claim (against the individual defendants only) to the extent that she is claiming another theory of section 1983 liability.

(6) The claim under California Civil Code § 52.1 is DISMISSED WITH LEAVE TO AMEND because plaintiff has failed to allege facts to show that any defendant interfered (or attempted to interfere) with her rights by threats, intimidation or coercion.

(7) The claims for intentional and negligent infliction of emotional distress are DISMISSED WITH PREJUDICE on the ground of state law immunity. The motion to dismiss the California Civil Code § 52.1 claim on the ground of state law immunity is DENIED.

(8) All claims against Kenilworth Junior High School are DISMISSED WITH PREJUDICE because it is not a suable entity.

Plaintiff shall have thirty (30) days from the date of this order to amend her complaint.

IT IS SO ORDERED.