**Traci NELSON**

v.

**TEMPLE UNIVERSITY
and Lee Downing.**

Civ. A. No. 95–5141.

United States District Court,
E.D. Pennsylvania.

Feb. 14, 1996.

Edmond A. Tiryak, Philadelphia, PA, Lisa M. Rau, Kairys, Rudovsky, Kalman & Epstein, Philadelphia, PA, for plaintiffs T. Doe, Traci B. Nelson.

John B. Langel, David S. Fryman, Kelly A. Walenda, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, for defendant Temple University.

David J. Gaier, Dessen, Moses & Sheinoff, Philadelphia, Jonathan D. Herbst, Kean K.

McDonald, Pamela Tobin, LaBrum & Doak, Philadelphia, PA, for defendant Lee Downing.

## MEMORANDUM AND ORDER

YOHN, District Judge.

■ Currently before the court is defendant Lee Downing's motion to dismiss plaintiff's claims against him.[1] Specifically, Downing argues that plaintiff's Title IX claim against him should be dismissed because Title IX does not provide for a cause of action against individuals. Defendant then asks that the court exercise its discretion under 28 U.S.C. § 1367 and dismiss plaintiff's remaining state law claims against him. Plaintiff asserts that, in fact, Title IX does authorize causes of action against individuals, and, even if it does not, the state law claims against Downing should remain before this court. Downing's motion to dismiss plaintiff's Title IX claims against him will be granted. The court, however, will continue to exercise its supplemental jurisdiction over plaintiff's remaining state law claims against Downing.

### I. Background:

■ Because the court is considering a motion to dismiss,[2] plaintiff's version of the underlying facts as set forth in her complaint will be accepted as true. Plaintiff is a twenty-eight year old female student who has attended Temple University's Ambler campus since September 1993. (Am.Compl. ¶ 7.) Plaintiff was also an employee at the Student Activities Office of the Ambler campus from September 1994 to December 1994. (Id.)

---

1. After Downing filed this motion to dismiss, plaintiff filed an amended complaint which contained a Title VII claim against Temple University and Downing, in addition to the claims asserted in the original complaint. In light of the Third Circuit Court of Appeals' recent ruling in *Sheridan v. E.I. DuPont de Nemours & Co.*, 1996 WL 36283, at *12–13 (3d Cir. Jan. 31, 1996), individuals cannot be liable under Title VII; therefore the Title VII claim against Downing will be dismissed.

2. The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint. *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987). In deciding a motion to dismiss for failure to state a claim, the court must "accept as true all allegations in the complaint and all reasonable infer-

ences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994) (citing *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989)). Dismissal is not appropriate unless it "is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Jordan*, 20 F.3d at 1261; *Robb v. Philadelphia*, 733 F.2d 286, 290 (3d Cir.1984). A complaint may be dismissed when the facts pled and the reasonable inferences therefrom are legally insufficient to support the relief sought. *Pennsylvania ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 179 (3d Cir.1988).

Defendant Downing was an administrative level employee in charge of student organizations and activities at the Ambler campus, and he was also responsible for the Student Activities Office where plaintiff was employed. (*Id.* ¶ 11.)

Plaintiff's complaint alleges that Downing subjected her to repeated and unwelcome sexual harassment and sexual assault from early September 1993 and continuing through the filing of her administrative complaint with the University's Office of Affirmative Action on September 22, 1994. (*Id.* ¶ 14.) Thereafter, plaintiff met with the Dean and an Assistant Dean of the Ambler campus to discuss the alleged harassment. (Am.Compl. ¶ 17–20.) The Office of Affirmative Action embarked upon an investigation of the allegations and, in February 1995, determined that there was a basis for believing that a violation of the University's sexual harassment policy had occurred. (*Id.* ¶ 27(f).) At that time, the University apparently suspended Downing. (*Id.* ¶ 28.) On June 5, 1995, plaintiff received a letter from the Office of Affirmative action which concluded that the actions of Downing "as alleged, constitute a violation of the policy on sexual harassment." (*Id.* ¶ 27(g).)

After filing the formal administrative complaint, Downing allegedly retaliated against plaintiff by adversely treating her and the student organization she managed, by defaming plaintiff, by attempting to organize students to impeach her as the general manager of a student organization, and by filing a civil complaint against plaintiff in the Court of Common Pleas of Philadelphia County. (*Id.* ¶ 21–26.)

Plaintiff filed sexual harassment and retaliation complaints with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission; she received right to sue letters from each agency. (*Id.* ¶ 29–30.) Plaintiff filed this action against Downing and Temple University on August 10, 1995, asserting violations of, and seeking damages under, Title IX and various state law claims.

## II. *The Title IX Claims* :

■ For purposes of the motion currently before the court, none of the material facts are in dispute; the sole issue under consideration is whether Title IX supports a cause of action against individuals.[3] A brief review of the history of litigation under Title IX reveals that the issue has not yet been settled.

In 1979, the Supreme Court determined that Title IX is enforceable through an implied private right of action. *Cannon v. University of Chicago*, 441 U.S. 677, 689, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). In 1992, the Supreme Court settled a divide among the courts of appeals by finding that the implied right of action supports a claim for monetary damages. *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 75, 112 S.Ct. 1028, 1037–38, 117 L.Ed.2d 208 (1992) (adopting the stance of the Third Circuit Court of Appeals in *Pfeiffer v. Marion Ctr. Area Sch. Dist.*, 917 F.2d 779 (3d Cir.1990)). In *Cannon* and *Gwinnett*, however, the Court did not indicate whether individuals were among those against whom the implied cause of action could be brought.

A majority of the few cases explicitly addressing the issue have concluded that Title IX does not authorize a cause of action against individuals. *See Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir.1988) ("In implying a cause of action under Title IX, the Supreme Court has considered only actions against educational institutions.... Accordingly, the separate liability of the supervisory officials must be established, if at all, under section 1983, rather than under Title IX."); *Clay v. Board of Trustees of Neosho County Community College*, 905 F.Supp. 1488, 1495–96 (D.Kan.1995); *Doe v. Methacton Sch. Dist.*, 1995 WL 549089, at *2 (E.D.Pa. Sept. 12, 1995) (opinion by Magistrate Judge Powers); *Leija v. Canutillo Sch. Dist.*, 887 F.Supp. 947, 952 (W.D.Texas 1995); *Aurelia D. v.*

---

3. Title IX provides, in part:
   No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any education program or activity receiving federal Financial assistance ...
20 U.S.C. § 1681.

*Monroe County Bd. of Educ.*, 862 F.Supp. 363, 367 (M.D.Ga.1994); *Bowers v. Baylor*, 862 F.Supp. 142, 145–46 (W.D.Texas 1994); *Seamons v. Snow*, 864 F.Supp. 1111, 1116 (D.Utah 1994); *Doe v. Petaluma*, 830 F.Supp. 1560, 1576–77 (N.D.Cal.1993); *Bougher v. University of Pittsburgh*, 713 F.Supp. 139, 143 (W.D.Pa.), *aff'd on other grounds*, 882 F.2d 74 (3d Cir.1989); *Bagley v. Hoopes*, 1985 WL 17643, at *5 (D.Mass. Aug. 6, 1985).

In *Petaluma*, a junior high school student brought an action against the school district, a school counsellor, and the principal, alleging that all of the defendants failed to stop the sexual harassment of the student by her peers. *Petaluma*, 830 F.Supp. at 1564–65. The court held that there is no cause of action against individuals under Title IX and, therefore, dismissed plaintiff's Title IX claims as to the school counsellor and the principal.[4] *Id.* at 1576–77. The court in *Petaluma* reasoned that "[s]ince the Act prohibits discrimination against beneficiaries in programs and activities that receive federal financial assistance, . . . it is the educational institution that must be sued for violations of Title IX." *Id.* The court further asserted that the "fact that administrative enforcement is directed at the institution that receives federal funds suggests that the private right of action is similarly confined to actions against the institution." *Id.* at 1577.

The court also looked to recent legislation to find more validation of its position. In 1986, Congress passed 42 U.S.C. § 2000d–7, which provided that remedies under Title IX are available against a state "to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than the state." 42 U.S.C. § 2000–7(a)(2). The court inferred that "the 1986 Amendment is consistent with the conclusion that there is no private right of action against individuals, since only remedies against 'public or private entit[ies]' are mentioned." *Petaluma*, 830 F.Supp. at 1577.

The *Petaluma* court also drew an analogy between Title IX and Title VII, 42 U.S.C. §§ 2000e to 2000e–17, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. Because Title VII and the ADEA attack evils "so intimately related to Title IX's history and the evils it attacks that it would make little sense to interpret Title IX to permit individual liability absent clear direction from Congress." *Id.*[5]

*Petaluma* appears to be the only decision in which a court finding no individual liability under Title IX engaged in a lengthy analysis of the issue. Nonetheless, as noted above, the great majority of cases presented with a Title IX cause of action against an individual have found, albeit in a conclusory fashion, no such liability.

Two district court opinions, cited by plaintiff, seem to allow a Title IX cause of action against individuals. *See Mennone v. Gordon*, 889 F.Supp. 53, 56–57 (D.Conn.1995); *Mann v. University of Cincinnati*, 864 F.Supp. 44, 47 (S.D.Ohio 1994).[6] The *Mann* court, however, did not allow a Title IX cause of action to proceed against an individual in his personal, or individual, capacity. Instead, the

---

4. The *Petaluma* court noted that the plaintiff did not oppose defendants' argument that there could be no action against individuals under Title IX. *Id.* at 1576.

5. In 1993, the Ninth Circuit held that individuals could not be held liable under Title VII or the ADEA. *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587–88 (9th Cir.1993). As noted earlier, the Third Circuit Court of Appeals recently adopted that position as well, ruling that Title VII does not support a cause of action against individuals. *Sheridan*, 1996 WL 36283, at *12–13.

6. Plaintiff cites *Pfeiffer v. Marion Center Area Sch. Dist.*, 917 F.2d 779 (3d Cir.1990), in support of her assertion that Title IX does authorize a cause of action against individuals. *Pfeiffer*, however,

held only that Title IX allowed an award of damages. *Id.* at 787–88. Prior to the Supreme Court ruling in *Franklin*, 503 U.S. 60, 112 S.Ct. 1028, discussed earlier, some courts of appeals determined that Title IX victims could seek only declaratory or injunctive relief, and others, like the Third Circuit, approved of damages awards. The *Franklin* decision confirmed the latter view.

Certainly some of the defendants in *Pfeiffer* were individuals, and, as plaintiff notes, the court declined to dismiss them from the action when it remanded the case to the district court. The issue of individual liability, however, was not squarely before the court then, and has not been since. Thus, *Pfeiffer* is not instructive.

court allowed a Title IX claim against an individual in his official capacity.[7]

The distinction between suit against an individual in his personal capacity and suit against an individual in his official capacity is not without significance. The Supreme Court has noted:

> Official capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' ... As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity.... It is not a suit against the official personally, for the real party in interest is the entity.

*Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985) (discussing official and personal capacity in terms of a 42 U.S.C. § 1983 action) (citations omitted). Suit against an individual in his official capacity is really a suit against the entity in receipt of federal funds, thus the *Mann* decision cannot be read to allow Title IX suits against individuals.[8]

The *Mennone* decision thus represents the only finding of a cause of action against individuals under Title IX. Adopting the reasoning of *Mennone,* plaintiff argues that the regulations promulgated under Title IX favor imposing liability on individuals such as Downing. In particular, plaintiff refers to 34 C.F.R. § 106.2 which provides that a "recipient of federal funds" includes

> any State or political subdivision thereof, or any instrumentality of a State or political subdivision thereof, any public or private agency, institution, or organization, or other entity, *or any person,* to whom Federal financial assistance is extended directly or through another recipient and *which operates* an education program or activity

which receives or benefits from such assistance including any subunit, successor, assignee, or transferee thereof.

*Id.* (emphasis added). Here, however, Temple University is the operator of the education program; Downing was simply an employee, not an operator of the educational program. *See Clay,* 905 F.Supp. at 1494 ("Title IX actions may only be brought against an educational institution, not an individual acting as an administrator or employee for the institution.").

Other indications favor this narrow reading of "recipient" over that adopted by the *Mennone* court and that which plaintiff would have the court adopt. Provisions from the same part of the Code of Federal Regulations suggest that "recipient" is limited to educational institutions or the owner or operator of a education program or activity, and should not extend to employees of such programs or activities. For instance, 34 C.F.R. § 106.8 requires each recipient to

> designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities under this part, including any investigation of any complaint communicated to such recipient alleging its noncompliance with this part or alleging actions which would be prohibited by this part. The recipient shall notify all its students and employees of the name, office address and telephone number of the employee or employees appointed pursuant to this paragraph.

*Id.* Such a regulation clearly does not indicate an understanding that "recipient" was to include employees of a federally funded educational institution. In addition, other regulations discuss the recipient's obligations in publishing policies, admitting students to its program, hiring employees, running athletic programs, offering counselling, and other ac-

---

7. In *Mann,* the court explicitly stated that "the Plaintiff's suit is properly brought under Title IX against the University and against Mr. Monast and Mr. Clemens [the individual defendants] in their official capacity." *Mann,* 864 F.Supp. at 47.

8. The court assumes, absent any contrary indication in plaintiff's pleadings, that she is asserting claims against Downing in his personal or individual capacity. Neither the caption nor any of plaintiff's pleadings suggest that she is suing Downing in his official capacity. In fact, Downing characterized plaintiff's claims against Downing as one that "seeks injunctive and monetary relief against Lee Downing in his individual or personal capacity." (Def.'s Mot. to Dismiss Pl.'s Compl. at 3, ¶ 7.) Plaintiff has not contested this characterization.

tivities which an individual employee could not be expected to perform or meet. The full body of regulations promulgated under Title IX, found at 28 C.F.R. pt. 106, suggests that the "person" language cited by the *Mennone* court and by plaintiff likely refers to an owner or operator of an independent education program or activity, rather than individual employees of the operator of an education program or activity. *But see Bustos v. Illinois Inst. of Cosmetology,* 1994 WL 710830, at *2 (N.D.Ill. Dec. 15, 1994) (finding no individual liability under Title IX against the president, principal owner, and instructor of the education program who allegedly harassed students).[9]

This court is persuaded by the reasoning in *Petaluma* and the absence of any clear authority suggesting that plaintiff can maintain a Title IX cause of action against an individual. Plaintiff's Title IX claims against Downing will be dismissed.

### III. *The Remaining State Law Claims*

[7] Downing also asked the court to dismiss plaintiff's state law claims against him under Fed.R.Civ.P. 12(b)(1) and 28 U.S.C. § 1367(c)(3). Downing asserted that if plaintiff's only federal claim against him were dismissed, the court could, in its discretion under 28 U.S.C. § 1367(c)(3), dismiss plaintiff's state law claims against Downing. Section 1367(c)(3) provides that a court may decline to exercise supplemental jurisdiction where all claims over which it has original jurisdiction have been dismissed.

All such claims have not, however, been dismissed. Although the only federal claims against Downing have been dismissed, the court clearly retains jurisdiction over them by virtue of their relationship to the claims against Temple University, the other defendant named by plaintiff. Plaintiff's Title VII and Title IX claims against Temple remain

before this court under its original jurisdiction. 28 U.S.C. § 1331.

Section 1367(a) provides that the "district courts shall have supplemental jurisdiction over all such other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution." Here, Temple University's crossclaim against Downing arises from the same facts involved in the Title IX and Title VII claims; the claims form part of "the same case or controversy."

Section 1367(c) provides that the district court may, in its discretion, decline to exercise supplemental jurisdiction in certain circumstances. 28 U.S.C. § 1367(c); *see also Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir.1995) ("Section 1367(c) was intended simply to codify those instances in which a district court is authorized to decline to hear a state law claim it would have the power to hear because of its relationship to an original federal jurisdiction claim."); *Palmer v. Hospital Auth. of Randolph County,* 22 F.3d 1559, 1569 (11th Cir. 1994) ("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c)."). As defendant notes, the only possibly relevant factor is dismissal of all claims over which it has jurisdiction. 28 U.S.C. § 1367(c)(3). Because claims over which the court has original jurisdiction—Title IX and Title VII—remain in the case, however, the court will retain supplemental jurisdiction over plaintiff's related state law claims against Downing.

---

9. Other courts have adopted the narrower version of "recipient." Most decisions have read Title IX's language to preclude a cause of action against individuals precisely because they are not recipients of federal funds within the meaning of Title IX and its implementing regulations. *See, e.g., Petaluma,* 830 F.Supp. at 1576 ("Since the Act prohibits discrimination against beneficiaries in programs and activities that receive federal financial assistance, ... it is the educational institution that must be sued for violations of Title IX."); *Methacton,* 1995 WL 549089, at *1 ("Giano and DiFonzo were not the recipient[s] of federal funds and, therefore, Title IX claims cannot be maintained against them."); *see also Snow,* 864 F.Supp. at 1116 ("[The private damages] remedy is available only when suit is brought against an 'education program or activity receiving federal financial assistance.'").