Melissa NORRIS

v.

**NORWALK PUBLIC SCHOOLS, et al.**

**Civ. Action No. 3:99 CV 696(SRU).**

United States District Court,
D. Connecticut.

Nov. 30, 2000.

---

Matthew C. Mason, Gregory & Adams, Wilton, CT, for Melissa Norris.

Melissa B. Geetter, Gordon, Muir & Foley, Hartford, CT, Michael Peter McKeon, Mark J. Sommaruga, Sullivan, Schoen, Campane & Connon Hartford, CT, for Norwalk Public Schools District, Norwalk Bd of Ed., John J. Ramos, Victor Herbert, J. Thomas Turner, Ralph Sloan.

Emanuel Margolis, Steven M. Frederick, Wofsey, Rosen, Kweskin & Kuriansky, Stamford, CT, for Frederick English.

## RULING ON DEFENDANT'S PARTIAL MOTION TO DISMISS

UNDERHILL, District Judge.

The plaintiff, Melissa Norris ("Norris"), brought this action against the defendants seeking damages and other relief for alleged sexual harassment by her public high school basketball coach in violation of 20 U.S.C. § 1681, et seq. ("Title IX"), 42 U.S.C. § 1983, and the Equal Protection Clause of the United States Constitution. In addition, Norris seeks damages against certain of the defendants on claims of negligence, assault, intentional infliction of emotional distress and negligent infliction of emotional distress. Currently pending is the defendants' Partial Motion to Dismiss (**doc.# 18**) filed by the Norwalk Public Schools District, the Norwalk Board of Education, Dr. John J. Ramos, Dr. Victor Herbert, J. Thomas Turner and Dr. Ralph Sloan (collectively "the Board"). For the reasons set forth below, the Board's motion is GRANTED IN PART and DENIED IN PART.

*Background*

For the purposes of the present motion, the court must assume the following allegations of the complaint to be true. From 1995 through 1998, Norris was a student at Norwalk High School. Compl. ¶ 15. From Fall 1995 through Winter 1998, the defendant Frederick English ("English") was Norris' coach on the Norwalk High School Girls' Junior Varsity and Girls' Varsity Basketball teams. Compl. ¶ 17. English was also Norris' physical education teacher from 1995 through 1997.

English became very fond of Norris and gave her preferential treatment, offering her certain "perks" such as the opportunity to baby sit for his children. Compl. ¶ 18. Norris alleges that English told her that he "loved her like a daughter." *Id.* When English learned, however, that Norris had begun dating and had a boyfriend, he became jealous and obsessed with Norris and his attitude towards her changed. Compl. ¶ 19.

Norris alleges that, beginning in late 1995 and continuing through Winter 1998, English engaged in a continuing and persistent pattern of sexual harassment. Compl. ¶ 20. Specifically, Norris alleges that English made numerous and repeated remarks of a sexual nature to Norris, and to others about Norris, that included his perception of her sex life. Compl. ¶ 21. For example, Norris alleges that, on more than one occasion, English referred to her as a "slut," and that English once told her that she was unable to run fast because she had large breasts. *Id.*

Norris also alleges that English had inappropriate physical contact with her, in-

cluding pinching her, grabbing her by the ponytail, touching and hitting her legs and hitting her in the back of the head. Compl. ¶ 22. Norris further alleges that English threatened to "beat" her on several occasions. Compl. ¶ 23.

Although Norris initially tolerated the alleged conduct because of her desire to play basketball, over time, the conduct became so severe that she suffered emotional distress, her grades suffered and she was forced to seek medical treatment and counseling. Compl. ¶ 27.

Norris' parents reported English's conduct to authorities at Norwalk High School. Compl. ¶ 28. In November 1997, Dr. John J. Ramos ("Ramos"), the principal of Norwalk High, told the plaintiff's mother that there had been other complaints about English. Id. The conduct, however, continued. Compl. ¶ 29.

In February 1998, Norris's parents wrote to Ramos about English's behavior. Compl. ¶ 30. In response, a meeting was held on or about March 17, 1998 that was attended by Ramos, the Norwalk teachers' union representative, the Norwalk High Athletic Director for women's sports and the plaintiff's parents. Norris alleges that, notwithstanding Ramos' assurances at that meeting that he would do something about the matter, he did nothing. Instead, Ramos later claimed that, because the matter involved allegations of sexual harassment, it would be referred to J. Thomas Turner ("Turner"), Assistant to the Superintendent for Human Relations at Norwalk Public Schools.

Norris and her mother corresponded with Turner and ultimately met with him on or about April 20, 1998. Compl. ¶ 31. Turner advised them, however, that the Board had a thirty-day "statute of limitations" policy for sexual harassment matters and, because the alleged incidents occurred more than thirty days prior, there was nothing that he could or would do. Id. Turner informed Norris that she was lucky to have learned such a valuable lesson so early in life. Id.

Norris' parents thereafter wrote to Dr. Victor Herbert, Superintendent of the Norwalk Board of Education since July 1998, seeking his assistance. Compl. ¶ 32. On or about October 5, 1998, Norris' mother spoke with Dr. Herbert over the telephone, at which time Dr. Herbert told Mrs. Norris that he would do nothing about English's alleged conduct. Compl. ¶ 33.

Norris alleges that, even before the 1995–96 academic year, one or more complaints were lodged with Norwalk by students, or parents of students, alleging sexual harassment, sex discrimination and/or other improper conduct by English. Compl. ¶ 14. Norris claims that the Norwalk Public Schools, the Norwalk Board of Education, Ramos, Herbert, Turner and Dr. Ralph Sloan, the former Superintendent of the Norwalk Public Schools, were on actual notice of English's alleged conduct toward female students. Id. Norris alleges, however, that neither the Board or these individuals did anything to address English's conduct notwithstanding the complaints by Norris and others. Compl. ¶ 33.

Norris claims that, as a result of English's alleged conduct, she was forced to quit the basketball team and transfer to another school in Norwalk beginning in the second half of what would have been her junior year at Norwalk High. Compl. ¶ 35. In addition, Norris' grades suffered and she is receiving ongoing medical care and psychological treatment. Id.

The Board moves to dismiss Count One of the plaintiff's Complaint against the individual defendants, claiming that there is no individual liability under Title IX. The Board also seeks dismissal of Counts Two and Three against the Norwalk Board of Education and the Norwalk Public Schools District on the grounds that those claims, arising under section 1983 and the Equal Protection Clause, are subsumed by the comprehensive enforcement scheme of Title IX. The Board further seeks to dismiss

or, in the alternative, to strike Count Three of the plaintiff's Complaint on the ground that her Equal Protection claim is identical or duplicative of her section 1983 claim in Count Two. Finally, the Board seeks to dismiss all claims against Sloan, arguing, in essence, that there are no allegations that Sloan was on actual notice of English's alleged conduct. Each of these arguments is addressed below.

*Standard of Review*

A motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The function of a motion to dismiss is "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984), *quoting Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). The motion must therefore be decided solely on the facts alleged. *See Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir.1985).

When deciding a motion to dismiss for failure to state a claim on which relief can be granted, the court must accept the material facts alleged in the complaint as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff. *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996); *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir.1995); *Skeete v. IVF America, Inc.*, 972 F.Supp. 206, 207 (S.D.N.Y.1997). The court "must not dismiss the action 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.' " *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994). The issue is not whether the plaintiff will prevail, but whether she should have the opportunity to prove her claims. *See Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*Discussion*

1. *Individual Liability Under Title IX*

Ramos, Herbert, Turner and Sloan move to dismiss the Title IX claim asserted against them in Count One on the ground that individuals may not be held liable under Title IX. In response, the plaintiff urges this court to adopt the reasoning of *Mennone v. Gordon*, 889 F.Supp. 53 (D.Conn.1995), that Title IX does not preclude liability against individual defendants, so long as they exercise a sufficient level of control over the federally funded program or activity under which the discrimination occurs. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Partial Motion to Dismiss ("Opposition") at 3–7.

a. *The Mennone Decision*

In *Mennone*, the court concluded that Title IX liability could be asserted against an individual who operates or controls a particular educational program or activity. *Mennone*, 889 F.Supp. at 56. In that case, a female high school student was subjected to almost daily insults and assaults by a male student who made remarks about her breasts, grabbed her hair, legs, breasts, and buttocks and threatened to rape her. *Id.* at 54–55. This was all done in the presence of the teacher, who refused to help. *Id.* at 55. But in May of the academic year, a rape crisis counselor came to address a class and for the first time the girl learned that the behavior was inappropriate and perhaps criminal. *Id.* Only then did she go to school guidance counselors, after which school administrators referred her to a rape crisis center where she learned that she could file criminal charges with the police. *Id.* In the face of the school's continuing inaction, however, the girl eventually had to leave school in order to avoid her harasser. *Id.*

In ruling on a motion to dismiss the plaintiff's Title IX claims against her

teacher and the superintendent, the court determined that the language of Title IX does not restrict the potential class of defendants based on their status, but rather based on their function or role in a program or activity. Title IX provides that:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance....

20 U.S.C. § 1681. The court found that the plain language of section 1681 "broadly refers to discrimination occurring 'under any education program or activity.'" *Mennone*, 889 F.Supp. at 56. According to the *Mennone* court:

This language does not restrict the potential class of defendants based on their nature or identity (i.e. individual, institution, etc.). It does, however, restrict them based on their function or role in a program or activity.... Thus, the plain language of the statute sets forth a functional restriction that does not preclude individual defendants, as long as they exercise a sufficient level of control.

*Id.* The court therefore concluded that an individual could be liable under Title IX if he exercised some level of control over the program or activity under which the discrimination occurs. *See id.*

The court in *Mennone* held this conclusion was supported by a review of the regulations adopted to implement Title IX. According to those regulations, "Title IX was designed to eliminate sex discrimination under any education program or activity receiving Federal financial assistance, 'whether or not such program or activity is offered or sponsored by an educational institution....'" *Id., citing* 34 C.F.R. § 106.1. Those regulations define a "recipient" as:

any State or political subdivision thereof, or any instrumentality of a State or political subdivision thereof, any public or private agency, institution, or organization, or other entity, *or any person, to whom Federal financial assistance is extended directly or through another recipient and which operates an education program or activity which receives or benefits from such assistance, including any subunit, successor, assignee, or transferee thereof.*

*Mennone*, 889 F.Supp. at 56 (emphasis in original), *citing* 34 C.F.R. § 106.2. The court concluded that this definition

clearly includes persons or entities that do not receive funding directly from the federal government. Further, it expresses the functional requirement we have described above by restricting the definition of recipients to persons who "operate" a program or activity. Such a restriction properly exposes those who have the power to prevent discrimination to liability, while shielding individuals who do not exercise such control.

*Id.* Accordingly, the court concluded that "the plain language of Title IX does not reveal any indication that Congress intended to exclude individuals as potential defendants." *Id.* at 57.

### b. Contrary Authority

The Second Circuit has not yet addressed the question whether an individual might be held liable under a Title IX private cause of action. Numerous other circuit courts and district courts that have addressed the issue—including District Courts within the Second Circuit—have found that individuals may not be liable under Title IX. *See, e.g., Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 611 (8th Cir.1999); *Floyd v. Waiters*, 133 F.3d 786 (11th Cir.), *vacated and remanded*, 525 U.S. 802, 119 S.Ct. 33, 142 L.Ed.2d 25 (1998), *reinstated*, 171 F.3d 1264 (1999), *cert. denied*, 528 U.S. 891, 120 S.Ct. 215, 145 L.Ed.2d 181 (1999); *Smith v. Metropolitan School Dist.*, 128 F.3d 1014, 1019–20 (7th Cir.1997), *cert. denied*, 524 U.S. 951, 118 S.Ct. 2367, 141 L.Ed.2d 736 (1998); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir.1988) ("In implying a cause of action under Title IX,

the Supreme Court has considered only actions against educational institutions.... Accordingly, the separate liability of the supervisory officials must be established, if at all, under section 1983, rather than under Title IX."); *Niles v. Nelson*, 72 F.Supp.2d 13, 17 (S.D.N.Y.1999); *Doe v. School Admin. Dist. No. 19*, 66 F.Supp.2d 57, 59 (D.Me.1999); *Communities for Equity v. Michigan High School Athletic Ass'n.*, 26 F.Supp.2d 1001, 1009 (W.D.Mich.1998); *Petrone v. Cleveland State Univ.*, 993 F.Supp. 1119, 1125 (N.D.Ohio 1998); *Buckley v. Archdiocese of Rockville Centre*, 992 F.Supp. 586, 588 n. 3 (E.D.N.Y.1998); *Burrow v. Postville Community Sch. Dist.*, 929 F.Supp. 1193, 1207 (N.D.Iowa 1996); *Nelson v. Temple Univ.*, 920 F.Supp. 633, 636–37 (E.D.Pa. 1996); *Pallett v. Palma*, 914 F.Supp. 1018, 1025 (S.D.N.Y.1996), *rev'd on other grounds*, 119 F.3d 80 (2d Cir.1997); *Torres v. New York Univ.*, 1996 WL 15691 at *2 (S.D.N.Y. Jan 17, 1996); *Clay v. Board of Trustees of Neosho County Community College*, 905 F.Supp. 1488, 1495–96 (D.Kan. 1995); *Leija v. Canutillo Sch. Dist.*, 887 F.Supp. 363, 367 (M.D.Ga.1994); *Bowers v. Baylor*, 862 F.Supp. 142, 145–46 (W.D.Texas 1994); *Seamons v. Snow*, 864 F.Supp. 1111, 1116 (D.Utah 1994); *Doe v. Petaluma*, 830 F.Supp. 1560, 1576–77 (N.D.Cal. 1993); *Bougher v. University of Pittsburgh*, 713 F.Supp. 139, 143 (W.D.Pa.), *aff'd on other grounds*, 882 F.2d 74 (3d Cir.1989).

■ Although the great majority of cases that have found no individual liability under Title IX have done so in a conclusory fashion, the few cases that have reached the same conclusion after a lengthy analysis of the issue are persuasive. *See, e.g., Nelson v. Temple University*, 920 F.Supp. 633, 635–38 (E.D.Pa.1996); *Doe v. Petalu-*

*ma*, 830 F.Supp. 1560, 1576–77 (N.D.Cal. 1993).

In *Petaluma*, for example, a junior high school student brought an action against the school district, a school counsellor, and the principal, alleging that all of the defendants failed to stop the sexual harassment of the student by her peers. *Petaluma*, 830 F.Supp. at 1564–65. The court held that there is no cause of action against individuals under Title IX and dismissed the plaintiff's Title IX claims against the school counsellor and the principal. *Id.* at 1576–77. The court reasoned that, because Title IX "prohibits discrimination against beneficiaries in programs and activities that receive federal financial assistance, ... it is the educational institution that must be sued for violations of Title IX." *Id.* The court stated that the "fact that administrative enforcement is directed at the institution that receives federal funds suggests that the private right of action is similarly confined to actions against the institution." *Id.* at 1577.

The court in *Petaluma* also looked to 42 U.S.C. § 2000d–7, which provides that remedies under Title IX are available against a state "to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than the state." 42 U.S.C. § 2000–7(a)(2). The court found this language "consistent with the conclusion that there is no private right of action against individuals, since only remedies against 'public or private entit[ies]' are mentioned." *Petaluma*, 830 F.Supp. at 1577.[1]

In *Nelson v. Temple University*, 920 F.Supp. 633 (E.D.Pa.1996), the court rejected the holding in *Mennone* that the regulations promulgated under Title IX support individual liability. Considering the 34 C.F.R. § 106.2 definition of a "re-

---

**1.** The *Petaluma* court also drew an analogy between Title IX and Title VII, 42 U.S.C. §§ 2000e to 2000e–17, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34. The court concluded that, because Title VII and the ADEA were "so

intimately related to Title IX's history and the evils it attacks ... it would make little sense to interpret Title IX to permit individual liability absent clear direction from Congress." *Petaluma*, 830 F.Supp. at 1577.

cipient of federal funds," the court noted that Temple University, not the individual defendant, was the operator of the education program. *Nelson,* 920 F.Supp. at 637. The individual defendant was simply an administrative level employee in charge of student organizations and activities for the Student Activities Office, not an operator of the educational program. *Nelson,* 920 F.Supp. at 635, 637.

The *Nelson* court also identified other reasons to interpret the term "recipient" narrowly:

> Provisions from the same part of the Code of Federal Regulations suggest that "recipient" is limited to educational institutions or the owner or operator of a education program or activity, and should not extend to employees of such programs or activities. For instance, 34 C.F.R. § 106.8 requires each recipient to designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities under this part, including any investigation of any complaint communicated to such recipient alleging its noncompliance with this part or alleging actions which would be prohibited by this part. The recipient shall notify all its students and employees of the name, office address and telephone number of the employee or employees appointed pursuant to this paragraph.

> *Id.* Such a regulation clearly does not indicate an understanding that "recipient" was to include employees of a federally funded educational institution. In addition, other regulations discuss the recipient's obligations in publishing policies, admitting students to its program, hiring employees, running athletic programs, offering counselling, and other activities which an individual employee could not be expected to perform or meet.

*Nelson,* 920 F.Supp. at 637–38. Accordingly, the court concluded that "[t]he full body of regulations promulgated under Title IX, found at 28 C.F.R. pt. 106, suggests

that the 'person' language cited by the *Mennone* court ... likely refers to an owner or operator of an independent education program or activity, rather than individual employees of the operator of an education program or activity." *Id.* at 638.

The *Nelson* court also noted that several other courts had adopted the narrower interpretation of "recipient," and that most of those decisions "have read Title IX's language to preclude a cause of action against individuals precisely because they are not recipients of federal funds within the meaning of Title IX and its implementing regulations." *Id.* at 638 n. 9 (citing cases). The court therefore dismissed Nelson's Title IX claims against the individual defendant. *Id.*

This court is persuaded by the reasoning in *Petaluma* and *Nelson* and the absence of any clear Second Circuit authority suggesting that plaintiff can maintain a Title IX cause of action against an individual. Moreover, holding that there is no individual liability under Title IX seems consistent with the Supreme Court's post-*Mennone* statement in *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 641, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), that "we have not extended damages liability under Title IX to parties outside the scope of [the government's enforcement] power." The government's enforcement power under Title IX consists primarily of "withholding federal funds from the recipient, which is the school district, not, for example, an individual teacher or school board member." *Niles,* 72 F.Supp.2d at 17, *citing* 20 U.S.C. § 1682.

In any event, even were the court to accept the proposition that Title IX liability may be asserted against an individual who operates or controls a particular educational program or activity, the plaintiff's effort to demonstrate that the individual defendants in this case qualify under that standard is unavailing. Norris relies on paragraphs 16–18 of her complaint to argue that her complaint "clearly asserts the

requisite level of control." Opposition at 4. Those paragraphs state:

16. In the fall 1995, Plaintiff tried out for, made and was named Captain of the Norwalk High School Freshman Girl's Basketball Team. Her skills quickly developed and she advanced to the Girl's Junior Varsity Basketball Team. Indeed, Plaintiff was so talented that as a freshman she even played on the Varsity, which went to the State tournament that season.

17. Defendant English was the plaintiff's coach on the Girl's Junior Varsity and Girl's Varsity Basketball teams from the fall of 1995 through the winter of 1998. English was also Plaintiff's physical education instructor from 1995 through 1997.

18. Defendant English became very fond of Plaintiff, an attractive young woman, and undertook to develop and cultivate a close personal relationship with her. This included offering Plaintiff "perks," such as babysitting for his children. His desire for familiarity with Plaintiff heightened to the degree that he would tell her that he "loved her like a daughter."

Compl. ¶¶ 16–18. These paragraphs do not even mention defendants Ramos, Herbert, Turner and Sloan, let alone set forth any allegations that they—or defendant English—have control over a particular educational program or activity receiving federal funds. *See also Price v. Wilton Public School District,* No. 3:97cv2218 (AVC), slip op. at 6–7 (D.Conn. Sept. 23, 1998) ("Although a 'person' may be a 'recipient' within the meaning of 34 C.F.R. § 106.2, such a 'person' must be someone who 'operates a program or activity.' Here, the individual defendants, as in *Petaluma* and *Nelson,* do not operate a program or activity. Rather the defendants

are *employees* of the recipient of federal funds. Accordingly the motion to dismiss the Title IX cause of action against the individual defendants is granted.") (emphasis in original).

In short, the court adopts the reasoning of *Petaluma* and *Nelson* and is persuaded by the weight of authority holding that a Title IX claim may not be brought against an individual. The Title IX claims asserted in Count One against the individual defendants are therefore dismissed.[2]

2. *Preclusion of Section 1983 and the Equal Protection Claim*

The Board also seeks dismissal of Counts Two and Three against the Norwalk Board of Education and the Norwalk Public Schools District on the grounds that those claims, arising under section 1983 and the Equal Protection Clause, are subsumed by the comprehensive enforcement scheme of Title IX.

The Second Circuit has recently held that section 1983 claims are subsumed by Title IX. *See Bruneau v. South Kortright Central School District,* 163 F.3d 749 (2d Cir.1998), *cert. denied,* 526 U.S. 1145, 119 S.Ct. 2020, 143 L.Ed.2d 1032 (1999). *Bruneau* involved a suit commenced by a student against the school district, school board, assistant superintendent and her teacher pursuant to both Title IX and section 1983 for alleged peer-on-peer sexual harassment. The defendants moved for summary judgment alleging, in part, that Title IX provided the exclusive remedy for plaintiff's claims and that her section 1983 claim should therefore be dismissed. The district court reasoned that Congress intended to preclude a section 1983 remedy for a violation of Title IX and granted that portion of defendants' motion. *See Bruneau,* 935 F.Supp. 162 (N.D.N.Y.1996).

In affirming the district court's decision, the Second Circuit noted that, although

2. Although only Ramos, Herbert, Turner and Sloan moved to dismiss the Title IX claim asserted against them in Count One and the defendant English did not join their motion, Count One is also dismissed against English sua sponte for the same reasons.

section 1983 may provide a procedural mechanism for the enforcement of constitutional or statutory rights, it "is not available for violations of all federal statutes." *Bruneau,* 163 F.3d at 756. Whether a federal statute may be enforced through section 1983 depends on the intent of Congress when enacting the statute. In determining Congressional intent, the Second Circuit relied on the *"Sea Clammers* doctrine,"* which states that "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Bruneau,* 163 F.3d at 756, *quoting Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n.,* 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (*"Sea Clammers "*). Applying this doctrine, the Court determined that "Title IX contains a sufficiently comprehensive enforcement scheme so as to foreclose the use of § 1983 to implement its provisions." *Id.* The Court concluded that "given Title IX's administrative and judicial remedies, we believe it was Congress' scheme that a claimed violation of Title IX be pursued under Title IX and not § 1983." *Id.* at 757. The Second Circuit made clear, however, that its decision applied only to the non-individual defendants, i.e., the school district and school board. *Bruneau* did "not address the extent to which Title IX subsumes a § 1983 claim against [ ] individual defendants...." *Id.* at 755.

The plaintiff's argument that section 1983 preclusion and the *Sea Clammers* doctrine do not apply where, as here, the section 1983 claim is based upon a violation of constitutional rights, is similarly unavailing. In *Bruneau,* the Second Circuit also held that Title IX precludes a section 1983 claim alleging violations of the Equal Protection Clause. *Id.* at 757–59.

Norris relies upon cases from other circuits that have carved out an exception to the *Sea Clammers* doctrine for constitutional rights. *See* Opposition at 9, *citing Lillard v. Shelby County Board of Edu-*

*cation,* 76 F.3d 716, 723 (6th Cir.1996). These circuits allow a Title IX plaintiff to bring a separate section 1983 action predicated on a violation of a constitutional right. For example, the Eighth Circuit concluded that *Sea Clammers* does not prevent a Title IX plaintiff from asserting an additional cause of action under section 1983 for violations of the Equal Protection Clause, even when the same set of facts gives rise to the claimed violation of the statutory right. *See Crawford v. Davis,* 109 F.3d 1281, 1284 (8th Cir.1997). Likewise, the Sixth Circuit declined to apply *Sea Clammers* to a case alleging both a Title IX claim and a section 1983 cause of action for violations of a plaintiff's Fourteenth Amendment rights. *See Lillard,* 76 F.3d at 722–24. The Sixth Circuit reasoned in part that the plaintiff's section 1983 action did not purport to gain remedies unavailable under Title IX, but instead sought to enforce distinct and independent substantive due process rights. *See id.* at 722–23. Similarly, the Tenth Circuit adopted the analysis set forth in *Lillard* and ruled that *Sea Clammers* did not bar a plaintiff from bringing causes of action under both Title IX for violations of the statute and section 1983 for violations of constitutional rights. *See Seamons v. Snow,* 84 F.3d 1226, 1233–34 & n. 8 (10th Cir.1996).

In *Bruneau,* however, the Second Circuit rejected these cases and joined "the Third and Seventh Circuits in recognizing no constitutional rights exception to the *Sea Clammers* doctrine." *Bruneau,* 163 F.3d at 758, *citing Waid v. Merrill Area Public Schools,* 91 F.3d 857, 862 (7th Cir. 1996); *Pfeiffer v. Marion Ctr. Area Sch. Dist.,* 917 F.2d 779, 789 (3d Cir.1990). Specifically considering a cause of action under section 1983 for violations of the Equal Protection Clause, the Court stated:

> We see nothing in *Sea Clammers* that would support a constitutional rights exception. *Sea Clammers* analyzes the alternative remedies available to a plaintiff to determine whether Congress

aimed to replace § 1983 as an available remedy. *See* 453 U.S. at 13, 20, 101 S.Ct. 2615. The exception that the Sixth, Eighth and Tenth Circuits have carved out shifts the focus of *Sea Clammers* toward the nature of the underlying right that a plaintiff asserts. Not surprisingly, nowhere in the Supreme Court's doctrine is there a requirement that a court examine what sort of underlying cause of action is alleged in a § 1983 claim to determine whether it is foreclosed by the statute. In short, no special exemption is provided for constitutional claims.

*Bruneau,* 163 F.3d at 757–58. Accordingly, the court held that "a § 1983 claim based on the Equal Protection Clause is subsumed by Title IX." *Id.* at 758.

■ Here, as in *Bruneau,* the plaintiff's section 1983 claim is based on the same factual predicate as her Title IX claim. *See* Compl. ¶ 40. In essence, Norris alleges that the defendants violated her Equal Protection rights by failing to remedy the situation at the school. Because her section 1983 claim is based on the same factual predicate as her Title IX claim, and because *Bruneau* held that Congress, when it enacted Title IX, intended to preclude section 1983 suits against non-individual defendants—even where those claims are based upon constitutional rights—Norris cannot maintain her section 1983 claim against the Norwalk Board of Education and the Norwalk Public Schools District. Accordingly, Count Two is dismissed as against the Norwalk Board of Education and the Norwalk Public Schools District, but remains pending against the individual defendants.

### 3. *Count Three—The Independent Equal Protection Claim*

■ In Count Three, the plaintiff asserts a separate cause of action for viola-

tion of her Equal Protection rights against all of the defendants. It is well established, however, that section 1983 "provides the procedural mechanism through which a plaintiff may bring a suit for violation of a federal right" against state actors. *Bruneau,* 163 F.3d at 756. Because a section 1983 claim against non-individual defendants is precluded by Title IX even where those claims are based upon constitutional rights, the plaintiff similarly cannot maintain this separate claim against the Norwalk Board of Education and the Norwalk Public Schools District.

The Board argues that Count Two and Count Three allege the same cause of action.[3] The court agrees. Count Two alleges that the defendants' conduct deprived the plaintiff "of rights, privileges and immunities secured by the United States Constitution, *including equal protection under the law,*" Compl. ¶ 43 (emphasis added). Count Three, entitled "Violation of Equal Protection Clause against all Defendants," alleges that "the Defendants have violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." Compl. ¶ 47. Because section 1983 provides the procedural mechanism through which an equal protection claim may be brought against state actors and because the plaintiff has already asserted a cause of action under section 1983 in Count Two,[4] including allegations that the conduct violated the plaintiff's equal protection rights, Count Three is duplicative of Count Two. Accordingly, Count Three is dismissed in its entirety.

### 4. *Sufficiency of Claims Against Dr. Sloan*

■ Finally, the Board moves to dismiss all of the claims asserted against Dr.

---

3. The plaintiff does not respond to this claim. *See* Opposition at 13, Section C.

4. As noted above, the section 1983 claim in Count Two is dismissed only with respect to the Norwalk Board of Education and the

Norwalk Public Schools District. Count Two remains pending against the individual defendants Ramos, Herbert, Turner, Sloan and English.

Ralph Sloan, the former Superintendent of the Norwalk Public Schools.[5] The Board argues that Norris has failed to set forth any allegations in her complaint that she or her parents informed or otherwise notified Sloan that English was allegedly harassing her. The Board claims that the complaint is similarly devoid of any allegations that Sloan learned of English's alleged conduct by any other means. Unlike the allegations of her communications with Ramos, Turner and Herbert, the Board argues, Norris has set forth no comparable claims in her complaint with respect to Sloan. *See* Defendant's Memorandum of Law in Support of Defendant's Partial Motion to Dismiss at 13–17.

Norris responds that her allegations put Sloan on plain notice of her claim—that Sloan was on actual notice of English's behavior towards female students and Norris, and that he failed to take the appropriate steps to protect against and stop the alleged conduct. *See* Opposition at 14. The court agrees.

Among other things, the allegations set forth in the complaint include claims that Sloan:

(1) "was the Superintendent of the Board of Education of the Norwalk Public Schools at all relevant times through in or about July 1998." Compl. ¶ 6;

(2) was "on actual notice of Defendant English's predilection toward sexual harassment of and other improper conduct towards female students." Compl. ¶ 14;

(3) "failed to promulgate and implement reasonable and necessary policies and practices to protect against and combat sexual harassment, discrimination and other wrongful conduct by teachers or coaches in Norwalk. This includes but is not limited to a 30 day 'statute of limitations' for sexual harassment or related com-

plaints. Said defendants have all tolerated, condoned and failed to take appropriate remedial action to protect Plaintiff (and other students) against the improper conduct of Defendant English." Compl. ¶ 34;

(4) failed "to take any reasonable and appropriate steps to protect against and respond to such behavior...." Compl. ¶ 35; and

(5) "showed a deliberate indifference to the Plaintiff's rights and/or tacitly approved of Defendant English's conduct." Compl. ¶ 41.

These allegations are sufficient to withstand the Board's motion to dismiss. The court cannot say at this juncture that "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994). Accordingly, the Board's motion to dismiss the remaining claim against Sloan is denied.

*Conclusion*

For the foregoing reasons, the defendants' Partial Motion to Dismiss (**doc.# 18**) is GRANTED IN PART and DENIED IN PART. Specifically, Count One is dismissed as against defendants Ramos, Herbert, Turner, Sloan and English, but remains pending against the Norwalk Board of Education and the Norwalk Public Schools District. Count Two is dismissed as against the Norwalk Board of Education and the Norwalk Public Schools District, but remains pending against defendants Ramos, Herbert, Turner, Sloan and English. Count Three is dismissed in its entirety.

It is so ordered.

---

5. Because the court has dismissed Count One against the individual defendants and has dismissed Count Three in its entirety, the only

claim remaining against Sloan is Count Two, asserting section 1983 liability.